FANNIE RUTHERFORD v. TOBIN QUARRIES, INC., and EMPLOYERS' CASUALTY COMPANY, Appellants.—82 S. W. (2d) 918.

Division Two, May 7, 1935.

*Hackney & Welch* for appellants.

*M. D. Aber* and *Musser & Musser* for respondent.

TIPTON, P. J.—This case comes to the writer on reassignment. It is an appeal from a judgment of the Circuit Court of Lafayette County, reversing an award of the Workmen's Compensation Commission which award denied compensation to the respondent.

The respondent filed a claim with the commission claiming as compensation the sum of $8300.60, on account of the death of her husband.

On July 18, 1931, J. S. Rutherford, the husband of the respondent received injuries causing his death in a collision between a truck owned and operated by him and a truck owned by R. H. Johnson and driven by Robert Menaugh. This collision occurred on a public highway in Lafayette County, about two and one-half miles from one of two rock quarries operated by the appellant. These quarries were called, respectively, No. 1 and No. 2. No. 1 was about four and one-half miles from the Missouri River and No. 2 was about six and one-half miles from the river. The appellant had a contract to deliver rock at the river for some United States Government river improvement work. The appellant employed a number of men to excavate the rock at the quarries and to load the trucks. At the river it also employed a man called a checker, who told the drivers on which one of the three barges the rock was to be delivered. This checker kept a record of the number of loads delivered by each truck and gave to the truck driver a receipt for each load. At the time of the accident there were about thirty trucks hauling rock and on each truck there was a two cubic yard body. Some owners drove their own trucks, while others hired drivers of their own selection. Truck owners were paid ninety cents per load for rock hauled from quarry No. 1 and $1.10 per load from quarry No. 2. The appellant did not own any trucks used for hauling the rock. The deceased had been hauling rock since June 17, 1931, and on that date entered into a written contract which will be referred to later.

The commission made an award to the appellant on the ground that the deceased was an independent contractor. Other essential facts will be stated during the course of this opinion.

I. We must first determine if there was any substantial evidence that the deceased was an independent contractor. "Our courts have held that the commission's finding that the employee was an independent contractor is in the nature of a special verdict and conclusive if supported by any substantial competent evidence. [Sec. 3342, R. S. 1929 (Mo. Stat. Ann., sec. 3342).]" [Carman v. Central

Western Dairies, 58 S. W. (2d) 781; Woodruff v. Superior Mineral Co., 70 S. W. (2d) 1104.] We will, therefore, consider only the evidence most favorable in support of the award together with all reasonable inferences which may be drawn therefrom to support the finding of the commission and will disregard the unfavorable testimony where contradicted by evidence supporting the commission's conclusion. When the facts are examined from this viewpoint, no doubt exists that the court may declare as a matter of law whether one is an independent contractor or merely a servant. [Gale v. Foundry Co., 177 Mo. 427, 76 S. W. 987.]

We have defined an independent contractor to this effect: "An independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the results of his work." [Flori v. Dolph (Mo.), 192 S. W. 949, 14 R. C. L., p. 67, sec. 2; Coul v. George B. Peck Dry Goods Co., 326 Mo. 870, 874, 32 S. W. (2d) 758, l. c. 759.]

The evidence in the case at bar shows that on June 17, 1931, the day the deceased started to haul rock he entered into the following written contract:

"This contract entered into this 17 day of June between Tobin Quarries, Inc. and/or Tobin-Walsh Construction Company, hereinafter referred to as Company, and J. S. Rutherford hereinafter referred to as Contractor:

"Whereas the Company desires to contract with the Contractor for the furnishing by the latter of a truck or trucks and a driver or drivers thereof, said trucks to be used for transporting rock and/or other commodities to and/or from premises where the company is engaged in operations pertaining to its business and the parties hereto desire that such use of trucks and drivers shall be upon an independent contractor basis and not upon a master and servant relation.

"Now, therefore, it is agreed that for the aforesaid purposes the Contractor will furnish truck or trucks and a driver or drivers therefor; that the Contractor shall cause said truck or trucks to be used in hauling and transporting such commodities as are specified by the Company to and/or from places designated by the Company; that the Contractor shall receive from the Company as the contract price a stipulated sum per yard, or per load, or per other unit of measurement to be agreed upon; that said truck or trucks shall be under the exclusive control of the Contractor, and the driver or drivers thereof shall likewise be under the exclusive control of the Contractor and shall be the exclusive employees of said Contractor and shall not be for any purpose whatsoever the employees of the Company; that the Company shall have no right or power to control the manner in which the Contractor or his employees shall perform the work provided for by this contract; that the Company shall only

have the power to require from the Contractor that the results of the work hereby contracted for shall be in accordance with the results of the work agreed to be done by the Contractor, it being the intention of the parties hereto that neither the Contractor nor his employees shall in any sense be considered to be the employees of the Company but that the Contractor shall be solely an independent contractor of the Company and shall be solely responsible for the action or non-action of his employees and for all matters and things connected with the manner in which the aforesaid work shall be performed by the Contractor or his employees.

"Signed this 17 day of June.

"Tobin Quarries, Inc.. and/or

"Tobin-Walsh Construction Company,.

"Per Q. B. Witter,

"J. S. Rutherford, Contractor."

The respondent contends that the true relationship between the deceased and the appellant was not expressed by the written contract. The respondent presented several other truck drivers as witnesses, among which was one by the name of Elmer Olds. He testified that there were two roads leading from the quarries to the river, one a gravel and the other a dirt road; that it was left entirely to the choice of the driver which road he used; that the truck drivers were never required to help load the trucks; that they were loaded by employees of the appellant after it had been indicated to the driver at what place in the quarry a particular load was to be put on the truck; that the truck driver then transported the rock to the river and there a checker for the appellant directed on which one of the three barges the rock was to be loaded; that the checker gave him a receipt or a check for each load so that he could get paid for hauling the rock; that the appellant did not "exercise any control over the manner in which you would drive the truck, other than point out at the river to you where you were to dump it and out at the quarry where to load it." He testified that sometimes the owners of the truck hired some one else to drive their trucks; that the truck drivers bought their gasoline and oil wherever they wanted to; that two cubic yard trucks were required to be fully loaded; that credit for the delivery of a load could not be procured until the checker arrived at the barge which was about six-thirty o'clock in the morning, and that he could not get his truck loaded until the employees arrived in the morning to load it, unless he loaded it himself; that he quit work whenever he wanted to, that he did quit on occasions to haul loads of feed, and that he used his truck for his personal use any time he wanted to unless he had a load of rock upon it; that he could quit any time he so desired and that if he wanted to lay off for a day he could do so.

Frank Witter was the sole witness for appellant. He was employed as its superintendent and testified that he was present when Rutherford executed the contract; that he never gave any directions to Rutherford as to the way he should drive his truck; that truck owners paid their own expenses for upkeep of the trucks but that some truck owners, being short of money, bought their gas, oil, etc., at a garage in Wellington where the appellant stood as guarantor for such indebtedness up to any amount which the appellant owed the truck owner, but the truck owners got their gas, repairs, etc., wherever they wanted to. The appellant had no trucks of its own and engaged trucks for hauling rock under written contracts like the one offered in evidence, about thirty in number.

He further testified; that from July 1, to July 18, Rutherford hauled loads varying in number per day from two to ten, and on two days did not work, the truck drivers laying off whenever they wanted to; that in June and July Rutherford hauled a total of 180 loads, consisting of 163 long hauls and 5 short hauls and received $179.30 for the long hauls and $4.50 for the short hauls; that he understood that truck owners ordinarily paid their hired drivers about one-third of the contract price, but he "had nothing to do with that."

The testimony of Mr. Olds was similar to the testimony of the other witnesses of the respondent. We think the evidence fails to show the written contract did not show the true relation between the parties. Moreover, we think there was sufficient evidence to justify the commission's conclusion that the relation between the deceased and the appellant was that of an independent contractor, even if we ignore the written contract.

"Necessarily the determination of each case must depend upon its own facts, and in applying the rule courts must give heed to the varying circumstances bearing upon the question whether the person rendering the service represents the will of his employer only as to the result of the work, and not as to the means by which it is accomplished." [Hoelker v. American Press, 296 S. W. 1008, 317 Mo. 64.]

In the case at bar, we have a person whose occupation is that of hauling for hire with his own truck, not only for the appellant but others. He chose his own route, and he determined the speed with which he drove. He worked at irregular hours, and quit when he saw fit. He had a right to substitute another in his place. "Personal service is the marked characteristic of the relation of master and servant. . . . The right of substitution does not connote personal service; on the contrary it is indicative of an independent contractual relation." [Coul v. George B. Peck Dry Goods Co., supra.]

The fact that the deceased did not have a contract to haul all the rock of the appellant would not prevent him from being an independent contractor. "No reason is seen why a man may not agree, as an independent contractor, *to deliver all, or part,* of the papers printed by a publisher, of the groceries sold by the grocerman, or of the goods sold by a merchant, if the method and means for doing so are left entirely to him without any right of control by the employer." (Italics ours.) [Gall v. Detroit Journal Co., 191 Mich. 405, 158 N. W. 36, 19 A. L. R. 1164.] So one may be an independent contractor where he has a contract to haul only a part of the rock taken from a quarry.

■ The respondent contends that the appellant had the right to discharge the deceased and therefore, the relation of an independent contractor could not exist. We do not believe that the evidence would justify such a conclusion. The testimony of witness Menaugh on this point was as follows:

"Q. Now, in that matter where the representative of the defendant was complaining about Mr. Snow's loads not being big enough what did Mr. Snow say about it? A. Mr. Snow said he wouldn't load any more.

"Q. Then they fired him? A. I don't know that they fired him.

"Q. Didn't work any more? A. Didn't work any more while I was on the job, I don't know."

This was not substantial evidence that the appellant had the right to discharge the truck drivers. [Scotten v. Insurance Company, 336 Mo. 724, 81 S. W. (2d) 313.] "The right to inspect the work to be done does not of itself make the relation one of agency, nor does the right to discharge the person or to require discharge of some one employed by him, nor is the manner of payment or character of the unit of calculation of payment for the thing done a conclusive test of the relation." [Hoelker v. American Press, supra.] The right to discharge does not of itself make the relation one of agency.

Respondent in her brief says:

■ "However, if there should be a doubt upon the efficacy of this case taken as a whole to show that the relation was that of employer and employee, by the very terms of the Act (Sec. 3304, subsec. (a)), the relation of employer and employee existed. The subsection reads: 'The word "employer" as used in this chapter shall be construed to mean, (a) "Every . . . corporation . . . using the service of another for pay." '

"Turning to Webster's dictionary, it is found that the definition of the word 'service' is given as: 'The performance of labor for the benefit of another.'

"Another definition by Webster for the word 'service' is 'labor done for another.' If we substitute this definition for the word

'service' in the statute, we would have the word 'employer' defined as,

" 'Every . . . corporation . . . using the labor of another.'

"Clearly, therefore, the defendant by reason of its admitted acceptance of the provisions of the Workmen's Compensation Act is upon its own evidence shown to have been using the service of Mr. Rutherford and becomes, therefore, as a matter of law, his employer."

If the respondent is correct in this contention there could be no such thing as an independent contract after the Compensation Act became effective. We do not believe that was the intention of the Legislature. The intention of the Legislature is to be gathered from a consideration of the whole act. [Betz v. Columbia Telephone Company, 24 S. W. (2d) 224.] The act does contemplate that there be such a relation of an independent contractor to the employer.

We have recently ruled against this contention of the respondent in the case of Maltz v. Jackoway Cap Co., 336 Mo. 1000, 82 S. W. (2d.) 909, 912. In that case we said:

"Furthermore, the framers of the act had in mind the law of master and servant and the relationship, duties, rights and limitations arising out of the same. The relationship is bottomed upon services (State ex rel. v. Board of Trustees, 192 Mo. App. 1. c. 587; Pace v. Appancose County, 184 Iowa, 498, 168 N. W. 916, 919) to be rendered by the servant—whether by that name, or one synonymous, as workman or employee (Words & Phrases, First, Second, Third and Fourth Series, title Servant and Employee)—to the other, whether as master or employer, and is peculiarly characterized by right of control vested in the latter. [Lawhon v. St. Joseph Veterinary Laboratories (court en banc), 252 S. W. 44.] The legislative design, proclaimed by the title and emphasized by the provisions of the act, was to ameliorate, in the interest of the workman and the public welfare, the losses sustained by himself and his dependents from accidental injuries received by him in the proper course of his work, irrespective of casual or contributing fault on his part. With such awareness and such purpose the Legislature saw fit to select and specify (Sec. 3308-a), a limited class of persons, independent contractors and their subordinates, as being entitled to the benefits of the act when, as shown above, the work was done on the employer's premises. Such legislative singling out would, under the elementary rule for the interpretation of documents of all sorts, *expressio unius est exclusio alterius,* necessarily operate to exclude from the act independent contractors not coming within the particular class designated, and nowhere mentioned or defined in the act. They are excluded from the benefits of the act also by the plain import of the statutory definition of employee (Sec. 3305-a), which definition, so far as pertinent, declares that the word 'shall

be construed to mean every person *in the service* of any employer,' etc. And the word service as used, signifies, as already pointed out, controllable service. 'It is a familiar rule of construction that where a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended.' [24 R. C. L., p. 994, sec. 236, and Perm. Supp., pp. 1641-1642; State v. Murlin, 137 Mo. 297, 38 S. W. 923.]''

We think the phrase ''using the service of another for pay'' as used in this section means the right to control the means and manner of that service, as distinguished from the results of such service. [Stein v. Battenfeld Oil & Grease Co., 327 Mo. 804, 39 S. W. (2d) 345.]

We hold that there was sufficient competent evidence to sustain the holding of the commission that the deceased was an independent contractor.

■ II. Respondent contends that if the deceased was an independent contractor still she would be entitled to compensation under Section 3308, subsection (a), Revised Statutes 1929. This section is as follows:

''Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.''

At the place where the deceased received the injuries from which he later died was on a public highway about two and one-half miles from the appellant's quarries. As this was a place that the deceased necessarily had to be to perform his duties under his contract, respondent claims that it was the ''premises of the employer'' within the meaning of the statute.

To support this proposition, respondent cites cases of which Howes v. Stark Bros. Nursery, 22 S. W. (2d) 839, and Wahlig v. Krenning-Schlapp Grocery Co., 325 Mo. 677, 29 S. W. (2d) 128, are typical. These cases are not in point because the relation between the parties was that of master and servant and not that of an independent contractor.

Respondent also relies on the cases of Simpson v. New Madrid Stove Co., 52 S. W. (2d) 615, and Meyers v. Adams, 50 S. W. (2d) 744. These cases hold that the relation between the parties was that of an independent contractor. In each case the injured party was cutting timber on land owned by defendant. At the time of the injury each was engaged in the usual course of his employer's busi-

ness. In both cases the court held the claimant came within the purview of Section 3308, supra, even though he was an independent contractor.

However, the appellant relies on the cases of Doyle v. Erard, 54 S. W. (2d) 1006, and Carman v. Central Western Dairies, 58 S. W. (2d) 781. In both cases the injured party was held to be an independent contractor. In each case the injury occurred on a public highway some distance from the defendant's place of business and liability was denied on the ground that injury did not occur "on or about the premises" of the defendant.

As above stated, in the case at bar the injury was received when the deceased was on a public highway about two and one-half miles from the appellant's place of business. We must, therefore, hold that this case does not come within the purview of Section 3308, supra.

The judgment of the circuit court should be reversed and remanded with directions to enter a judgment affirming the award of the commission. It is so ordered. All concur.