ROY BULLOCK, RESPONDENT, v. R. B. POTASHNICK AND HARTFORD ACCIDENT AND INDEMNITY COMPANY, APPELLANTS.—162 S. W. (2d) 607.

Springfield Court of Appeals, May 14, 1942.

Rehearing denied June 4, 1942.

666

*Finch & Finch* for appellants.

*Tedrick & Tedrick* and *Byron Kearbey* for respondent.

FULBRIGHT, J.—This is an appeal from a judgment of the Circuit Court of Butler County affirming an award of the Workmen's Compensation Commission in favor of Roy Bullock, respondent.

On October 18, 1939, respondent was injured for which he subsequently filed claim for compensation before the Workmen's Compensation Commission. The case was set down for hearing before a referee, at Poplar Bluff, on Monday, May 20, 1940, at which time it was admitted that on or about October 18, 1939, R. B. Potashnick was a major employer operating under the provisions of the Missouri Workmen's Compensation Law and that his liability under said law was fully insured by the Hartford Accident and Indemnity

Company; that on or about October 18, 1939, Roy Bullock "sustained an accident" arising out of the course of his employment with R. B. Watkins, who was a sub-contractor of Potashnick; that the employer had "notice of the accident", the claim for compensation was filed within the time prescribed by law, the rate of compensation is $6.40, and that no compensation has been paid.

Thereupon the following stipulation was entered into by and between the parties in the presence of the referee:

"It is stipulated and agreed that R. B. Potashnick had a contract with the Ozark Border Electric Co-operative of Poplar Bluff, Missouri, for the construction of electric lines out of Poplar Bluff, Missouri; that R. B. Potashnick was a major employer coming under the Workmen's Compensation Act, and insured by the Hartford Accident & Indemnity Company; that R. B. Potashnick entered into a verbal contract with Robert Watkins to haul poles to be used in the construction of the lines at 30 cents per pole; that Watkins was to and did furnish his own means of transportation, employed his own help, paid them, hired them, discharged them, fixed their hours of service and their rate of pay, being responsible only to Mr. Potashnick for the ultimate result of the work, and that the issues to be determined insofar as Mr. Potashnick and the Hartford is concerned, is whether or not the accident occurred on the premises of R. B. Potashnick, the original contractor, and the nature and extent of his injuries or the amount of his disability."

The record discloses that R. B. Potashnick had a contract with the R. E. A. to erect a high line along its right-of-way in Butler County, and that Potashnick had entered into a verbal contract with Robert Watkins to deliver the necessary poles from the railroad to the R. E. A. right-of-way at 30 cents per pole; that said poles were shipped by rail to Qulin, Missouri, consigned to R. B. Potashnick and Watkins had employed respondent to assist in unloading and delivering them. Some six or eight cars had been shipped by rail and unloaded at Qulin. At the time of respondent's injury a car had been spotted on the Frisco side track for the purpose of being unloaded and during the process a pole fell on respondent's feet crushing and mangling both of them. It appears that it was the duty of Watkins, under his verbal contract with Potashnick, to get the poles from the cars, and distribute them along the R. E. A. right-of-way according to work sheets showing sizes and heights of poles wanted at various places and at such time and place as they were needed; that in the beginning of the work and for about two weeks Potashnick's foreman went with Watkins to instruct him how to unload and deliver the poles according to the work sheets; that he especially instructed him to get the cars unloaded before demurrage set in. When a car would arrive at Qulin, Potashnick was notified by the railroad agent, and thereupon Potashnick or one of his employees would in turn notify Watkins and instruct him to unload and deliver

the poles according to the work sheet that was then furnished him. At times it was necessary to unload a number of them and place them on the ground in order for the workmen to be able to pick out the required size, and the other poles that were unloaded but not then needed were temporarily stacked upon the ground near the track.

The injuries received by respondent were of a serious character. His left foot was crushed and several bones of the right foot were fractured. The great toe of his right foot was amputated and the next toe thereto will have to be amputated and permanent injury to this foot is to the extent of twenty-five per cent. It also appears that he had incurred surgical, medical and hospital bills prior to the time of the hearing before the Commission amounting to approximately $600.

In view of the stipulation above set out it would seem that a determination of whether or not the injuries sustained by respondent were received upon or about the premises of R. B. Potashnick would be decisive of this case. Obviously, this question must be determined in the light of Section 3698, Revised Statutes Missouri, 1939, (Mo. Stat. Ann., sec. 5308, p. 8242), and particularly subsection "a" thereof, and the term "premises" as used therein should be liberally construed and applied. [Sargent v. Clements, 88 S. W. (2d) 174.] The term "premises" as described in said Section 3698a does not necessarily mean premises owned or leased by the employer, or over which he exercises dominion, but includes any place under the exclusive control of employer, for the time being, where the employer's usual business is being carried on or conducted, and where, in the usual operation of his business it is necessary for his employees to be while doing the work. [Sargent v. Clements, *supra*; Simpson v. New Madrid Stave Co., 52 S. W. (2d) 615; Crabtree v. Ramsey, 115 S. W. (2d) 14; Cates v. Williamson, 117 S. W. (2d) 655.] That the unloading of the poles from the car spotted on the Frisco track at Qulin was necessary to and a part of the operation of Potashnick's usual business at such place is obvious. Several car loads of poles consigned to Potashnick had there been unloaded. Who, other than Potashnick, when the process of unloading was going on, had possession of the car upon which the poles had been shipped or the grounds contiguous to the place where the car had been spotted and necessary for the unloading operation to be carried on? It is true that the railroad company had a right while switching other cars, upon notice to Potashnick, to move the car at such times as other cars were being switched upon such siding or loading track. But aside from this right on the part of the railroad company, Potashnick's control was exclusive. Moreover, the car and the ground adjacent thereto was the place where, in the usual operation of Potashnick's business, it was necessary for his employees to be while doing the work.

It is the contention by appellant that the shipment by rail to Potashnick, the general contractor, and the spotting of the car on

the public unloading track, did not make the car, nor the unloading right-of-way, nor the team track premises of R. B. Potashnick, as Potashnick, as the consignee of the rail shipment, was merely an invitee. In support of this contention they cite Lovell v. The Kansas City Southern Railway Co., 121 Mo. App. 466, 97 S. W. 193; Butler v. Chicago, Rock Island & Pacific Railway Co., 155 Mo. App. 287, 136 S. W. 729; Brady v. Terminal Railway Assoc., 102 S. W. (2d) 903. It is true that a consignee going on the railroad right-of-way to unload a car is held, in effect, to be an invitee, in the above cited cases, and bears that relationship to the railroad company. But, notwithstanding that fact, such invitee is lawfully and rightfully on the premises, has exclusive control of the car and the grounds contiguous thereto necessary for the process of unloading, subject only to disturbance by the railway company, while the unloading is being performed, warning first having been given. Does he not, in this situation, appropriate the premises to his use for the specific purpose with the permission, consent and acquiesence of the railroad company? Under these circumstances, would not the car being unloaded and the ground necessary for the operation become the premises of the invitee within the meaning of Section 3698a, *supra*? To these questions we answer in the affirmative.

Again appellants contend the term "on the premises", as used in Section 3698a does not include public places where the public generally is permitted to go, such as highways, etc. To support this proposition they cite cases of which Rutherford v. Tobin Quarries, 82 S. W. (2d) 918; Doyle v. Erard, 227 Mo. App. 384, 54 S. W. (2d) 1006, are typical. These cases are not in point since the injury in each instance occurred while claimant was traveling along a public highway used by vehicles and pedestrians and presents an entirely different situation than that which confronts us in the instant case.

It is our opinion that the facts before us support a finding that the work at which respondent was engaged was "on or about" the premises of Potashnick and that the work was "an operation of the usual business" of Potashnick, "there carried on". The words "on or about" must be liberally construed. The unloading of the poles was an important adjunct to the business in which Potashnick was engaged and since the poles were consigned to him it is not unreasonable to hold that the words, "on or about his premises" would include the unloading place, whether upon the right-of-way of railroad or the right-of-way of the electric company. [Cobb v. Standard Accident Ins. Co., 31 S. W. (2d) 573.] While this case may not be an authority on this proposition, it is very persuasive.

It is the opinion of this court that the respondent was injured "on or about" the premises of Potashnick within the meaning of the statute under consideration. To hold otherwise would be to defeat justice by resorting to purely indefensible technicalities. The Workmen's Compensation Act in all respects should be liberally construed

as to the person to be benefited, and any doubt as to the right of compensation should be resolved in favor of the employee. [Pruitt v. Harker, 43 S. W. (2d) 769.]

Having so ruled on this issue it becomes immaterial whether Robert Watkins, who employed respondent, was an independent contractor, a sub-contractor or whether the relation between the respondent and the appellant, Potashnick, was that of Master and Servant. In either event respondent having been injured "on or about the premises" of Potashnick is entitled to recover.

There being ample, substantial evidence to support the award of the Commission, the judgment of the circuit court is affirmed. *Blair, P. J.*, and *Smith, J.*, concur.