STATE OF MISSOURI at the relation of R. B. POTASHNICK and HARTFORD ACCIDENT AND INDEMNITY COMPANY, Relators, v. DAVID E. BLAIR, JAMES F. FULBRIGHT and ROBERT J. SMITH, Judges of the Springfield Court of Appeals, Respondents.—No. 38224.—169 S. W. (2d) 59.

Division One, March 2, 1943.

*Finch & Finch* and *Freeland L. Jackson* for R. B. Potashnick and Hartford Accident & Indemnity Company, relators.

*Tedrick & Tedrick* and *Byron Kearbey* for respondents.

860

■■■■■■■■■■■■■■■■■■

■ HYDE, J.—This is certiorari to the Springfield Court of Appeals by which relator seeks to quash its decision in the case of Bullock v. Potashnick, 162 S. W. (2d) 607, on the ground of conflict with decisions of this court. Bullock filed a claim under the Workmen's Compensation Act and the Commission made an award in his favor. This was affirmed by the circuit court and by the Court of Appeals.

A stipulation as to facts was made as follows:

"It is stipulated and agreed that R. B. Potashnick had a contract with the Ozark Border Electric Co-operative of Poplar Bluff, Missouri, for the construction of electric lines out of Poplar Bluff, Missouri; that R. B. Potashnick was a major employer coming under the Workmen's Compensation Act, and insured by the Hartford Accident & Indemnity Company; that R. B. Potashnick entered into a verbal contract with Robert Watkins to haul poles to be used in the construction of the lines at 30 cents per pole; that Watkins was to and did furnish his own means of transportation, employs his own help, paid them, hired them, discharged them, fixed their hours of service and their rate of pay, being responsible only to Mr. Potashnick for the ultimate result of the work."

The Court of Appeals states the facts concerning the methods of work and the manner of Bullock's injury, as follows:

"Six or eight cars had been shipped by rail and unloaded at Qulin. At the time of respondent's injury a car had been spotted on the Frisco side track for the purpose of being unloaded and during the process a pole fell on respondent's feet. . . . It was the duty of Watkins, under his verbal contract with Potashnick, to get the poles from the cars, and distribute them along the R. E. A. right-of-way according to work sheets showing sizes and heights of poles wanted at various places and at such time and place as they were needed; that in the beginning of the work and for about two weeks Potashnick's foreman went with Watkins to instruct him how to unload and deliver the poles according to the work sheets; that he especially instructed him to get the cars unloaded before demurrage set it. When a car would arrive at Qulin, Potashnick was notified by the railroad agent, and thereupon Potashnick or one of his employees would in turn notify Watkins and instruct him to unload and deliver the poles according to the work sheet that was then furnished him. At times it was necessary to unload a number of them and place them on the

ground in order for the workmen to be able to pick out the required size, and the other poles that were unloaded but not then needed were temporarily stacked upon the ground near the track.''

The Court of Appeals ruled as to the construction of Section 3698a, R. S. 1939, Mo. Stat. Ann., 3698a, thus:

''The term 'premises' as described in said Section 3698a does not necessarily mean premises owned or leased by the employer, or over which he exercises dominion, but includes any place under the exclusive control of employer, for the time being, where the employer's usual business is being carried on or conducted, and where, in the usual operation of his business it is necessary for his employees to be while doing the work. . . .

''It is true that the railroad company had a right while switching other cars, upon notice to Potashnick, to move the car at such times as other cars were being switched upon such siding or loading track. But aside from this right on the part of the railroad company, Potashnick's control was exclusive. Moreover, the car and the ground adjacent thereto was the place where, in the usual operation of Potashnick's business, it was necessary for his employees to be while doing the work. . . . (We note, however, that employees of Potashnick did not work there at unloading cars but only the employees of the independent contractor.)

''It is true that a consignee going on the railroad right-of-way to unload a car is held, in effect, to be an invitee, in the above cited cases, and bears that relationship to the railroad company. But, notwithstanding that fact, such invitee is lawfully and rightfully on the premises, has exclusive control of the car and the grounds contiguous thereto necessary for the process of unloading, subject only to disturbance by the railway company, while the unloading is being performed, warning first having been given. Does he not, in this situation, appropriate the premises to his use for the specific purpose with the permission, consent and acquiescence of the railroad company? Under these circumstances, would not the car being unloaded and the ground necessary for the operation become the premises of the invitee within the meaning of Section 3698a, supra? To these questions we answer in the affirmative.''

''It is our opinion that the facts before us support a finding that the work at which respondent was engaged was 'on or about' the premises of Potashnick and that the work was 'an operation of the usual business' of Potashnick, 'there carried on.' The words 'on or about' must be liberally construed. The unloading of the poles was an important adjunct to the business in which Potashnick was engaged, and since the poles were consigned to him it is not unreasonable to hold that the words, 'on or about his premises,' would include the unloading place, whether upon the right-of-way of the railroad or the right-of-way of the electric company.''

Clearly, under the stipulation, Watkins was an independent contractor and he was admitted to be Bullock's employer. The Court of Appeals distinguished Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S. W. (2d) 918, relied on by relator, on the ground that the injury in that case occurred on a public highway while engaged in hauling rock under the relationship of independent contractor with the Quarries Company. In that case, we overruled the claimant's contention that "as this was a place that the deceased necessarily had to be to perform his duties under his contract, respondent claims that it was the 'premises of the employer' within the meaning of the statute." It is urged that the ruling herein does not conflict with the Rutherford case because the facts are different. Of course, if Bullock had been injured while riding on a truckload of poles along a public road on his way from the railroad yards to the right of way of the electric company we would have exactly the same factual situation, and the Rutherford case would directly apply. But does not loading the truck in railroad yards, open to the public, require the application of the same principle?

We think it does and we think also that the Court of Appeals' ruling directly conflicts with the principles established in this court's ruling in Sargent v. Clements, 337 Mo. 1127, 88 S. W. (2d) 174. We ruled therein concerning the construction of Section 3698a "that 'premises' as there used contemplates any place, *under the exclusive control of the employer,* where the employer's usual business is being carried on or conducted, and that the benefits of the Compensation Act accrue to any person injured, or the dependents of any person killed, while doing work, under contract, at such place, which is necessary to and a part of the operation of such employer's usual business at such place." (Our italics.) The Sargent case was ruled on the theory that the control of the premises by the principal employer therein was exclusive because the place was "the section of road which was in charge of and under construction by (him)" for a state highway. Such premises are, of course, withdrawn from public use and are under the exclusive control of the construction contractor and he is carrying on there an operation of his usual business of constructing a highway over these premises. It is true that the Workmen's Compensation Act is to be "liberally construed with a view to the public welfare." [Section 3764, R. S. 1939—Mo. Stat. Ann. sec. 3764.] However, application of Section 3698a to places used for a substantial period of time by an employer, and *under his exclusive control* while carrying on an operation of his usual business, is as liberal a construction as can be made without going beyond the terms of the act. For that reason, an independent contractor ▮ going to and from such premises to haul material is not within the act under our ruling in the Rutherford case. Was that not the real situation here? How can these railroad yards be held under the exclusive control of Potashnick in this case?

The Court of Appeals recognizes that Potashnick could be no more than an invitee on the premises of the railroad, but rules that such an invitee "has exclusive control of the car and the grounds contiguous thereto necessary for the process of unloading" but that he is nevertheless subject to interruption and disturbance for the convenience of the railroad company in the transaction of its business there. Certainly that is not actually exclusive control as required by our decision in the Sargent case. Surely it is contrary to many of our rulings defining the rights of an invitee (as not extending beyond the terms of his invitation) to say that he has exclusive possession of the premises to which he is invited for business purposes. [Brady v. Terminal R. Assn., 340 Mo. 841, 102 S. W. (2d) 903; Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S. W. (2d) 797; Murphy v. Fred Wolferman, Inc., 347 Mo. 634, 148 S. W. (2d) 481; Stevenson v. Kansas City Southern R. Co., 348 Mo. 1216, 159 S. W. (2d) 260.] Certainly his invitation to unload goods from a car consigned to him is not to take exclusive control of any part of the station railroad yards of a common carrier where many other people are likewise entitled to come as similar invitees at all times. Potashnick did not have a private unloading yard, and there is nothing here to indicate that any two cars, delivered at different times, would even be at the same place for unloading in the yards. If Section 3698a can be construed to cover this situation, then it would seem that any independent drayman going upon railroad grounds to deliver goods to a merchant would be under the act, as working on or about the merchant's premises. To come under this section the test is not whether the place of injury is one where actual employees are required to go, but instead, whether the independent contractor is working at a place on or about the principal's premises in an operation of the usual business he carries on there.

Cobb v. Standard Accident Insurance Company (Mo. App.), 31 S. W. (2d) 573, cited by the Court of Appeals, was ruled on the theory that the employee therein was an actual employee of the operator of the business and not of an independent contractor; and it is not even shown whether the loading place referred to therein was a private loading yard of the employer or otherwise. In other cases cited, the principal employer, sought to be held, did have exclusive control of the premises, where the independent contractor was working, by lease or other arrangement with the owner of lands not being used for any public purpose; and he was not an invitee only (for the purpose of transacting business along with other members of the public also invited) on the business premises of another as in this case. In holding that Section 3698a is applicable to employees of an independent contractor at a place where the principal employer is no more than an invitee and therefore cannot actually have exclu-

sive control, the decision of the Court of Appeals herein is in conflict with the decisions of this court above discussed.

It is ordered that the record and opinion of the Springfield Court of Appeals in the case of Bullock v. Potashnick be quashed. All concur.