**BAKER**

v.

**IOWA–MISSOURI WALNUT LOG CO.,**
Inc. et al.

No. 22068.

Kansas City Court of Appeals.

Missouri.

June 7, 1954.

J. K. Owens and Martin Anderson, Kansas City, for appellant.

Harold T. VanDyke; Davis, Thomson, VanDyke & Fairchild, Kansas City, and Price Shoemaker and Elmer E. Reital, St. Joseph, for respondents.

CAVE, Presiding Judge.

This is a claim under the Workmen's Compensation Act. A hearing was held before a Referee of the Industrial Commission, who found that "*Earl* Baker was not an employee of the Iowa and Missouri Log Company" at the time of injury and denied compensation. Review by the Commission resulted in a finding, by a vote of 2 to 1, that *Earl* Baker was a statutory employee and entitled to compensation. The material part of the majority finding is: "We further find that the employee, *Earl* Baker, was an employee of *Eldon* Baker, an independent contractor, and at the time the aforesaid injury was sustained, the employee *Earl* Baker was engaged in *work on the premises of the Iowa and Missouri Walnut Log Co.*, and that the said *Earl* Baker is a statutory employee of alleged employer herein. R.S.1949, Sec. 287.040(1) [V.A.M.S.]" (Italics ours.) Other necessary findings of the Commission are not called in question on appeal and need not be stated.

An appeal from the award of the Commission was taken to the Circuit Court of Caldwell County, and that court found "that there was not sufficient, competent evidence to warrant the making of the

award", and reversed the action of the Commission. Employee perfected his appeal to this court.

The specific question raised on appeal is whether or not, under the evidence, *Earl* Baker was an employee of the Log Company, within the meaning of Section 287.040, subd. 1. This section reads: "1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

It is conceded that the evidence is sufficient for the Commission to find: that the Log Company was engaged in the business of buying walnut logs, fabricating walnut timber, and manufacturing gun stocks at its plant in St. Joseph, Missouri; that *Eldon* Baker was an independent contractor; that *Earl* Baker was his employee; that *Earl* was injured while cutting timber on a farm owned by L. C. McWilliams, which was located several miles from the Log Company's plant at St. Joseph; that the Log Company was operating under the Workmen's Compensation Act, and that *Eldon* Baker was not so operating.

The status of a statutory employee is created by statute, Section 287.040, subd. 1, and in order for it to exist, all of the elements constituting such an employee must be present. The essential elements are: (1) "work done under contract"; (2) "on or about his (employer's) premises", and (3) in "an operation of the usual business which he there carries on". It is conceded that there was sufficient evidence to support the finding of fact by the Commission that the Log Company was having *work done by contract*, and that *Eldon* Baker was an independent contractor, and that *Earl* Baker was his employee. The controverted issue is whether there was sufficient competent evidence to support the finding that *Earl* Baker was engaged in work *on the premises* of the Log Company in an *operation* of the *usual business* which it was there carrying on.

In general, the evidence is that *Eldon* Baker would locate walnut trees and negotiate for the purchase of the same and then draw a sight draft on the Log Company in payment of the agreed price; that he would then employ men to fell the trees and saw them into proper length logs and put them in freight cars or at a point where the Log Company could load them in trucks to be shipped to its plant in St. Joseph, where they would be fabricated into lumber or gun stocks; that the Log Company would pay *Eldon* Baker so much per thousand feet for cutting and shipping the logs and that *Eldon* Baker would pay his employees so much per thousand feet for their work. In addition, the Log Company desired certain stumps to be dug out by the roots, and for this the Company paid *Eldon* Baker according to the size of the stumps, ranging from $5 to $10. They were handled in the same way as the logs. It is also in evidence that Eldon Baker at times used a truck, a tractor and a saw, and possibly other tools, belonging to the Log Company, and when such equipment was so used, the Log Company deducted $5 per thousand from the price to be paid Eldon Baker.

In the instant case, Eldon Baker negotiated with one L. E. McWilliams for the purchase of 63 walnut trees on the McWilliams farm and agreed to pay $600 therefor, and drew a sight draft on the Log Company in payment thereof. The contract of purchase was oral and the record does not disclose any restrictions on the time or manner of cutting the trees or any right of ingress or egress for that purpose. However, shortly after the consummation of the sale, *Eldon* Baker went upon the McWilliams farm with his employees and equipment and was in the process of cutting the timber when his brother *Earl* received his injuries.

The evidence clearly supports the conclusion that the Log Company owned these trees and the logs and stumps which were produced therefrom; that Eldon Bak-

er did not own the trees, logs or stumps, and was not selling them to the Log Company; and therefore the relationship of vendor and vendee did not exist. He was being paid to process the trees into logs and stumps and to deliver them to the Log Company for shipment by rail or truck. He employed his own help and had exclusive control over them and paid them such compensation as he saw fit.

Under Section 287.040, subd. 1, if *Eldon Baker* was doing work for the Log Company, *under contract, on or about the premises* of the Log Company, and in an operation of the *usual business* which the Log Company was there carrying on, then the Log Company would be liable to Earl Baker, because the statute specifically provides that such person (Log Company) shall be liable to the "contractor, his subcontractors, and *their employees, * * *"*.

In Sargent v. Clements, 337 Mo. 1127, 88 S.W.2d 174, 178, and State ex rel. Potashnick v. Fullbright 350 Mo. 858, 169 S.W.2d 59, 61, the court construed the word "premises" as follows: "that 'premises' as there used contemplates any place, *under the exclusive control of the employer*, where the employer's ususal business is being carried on or conducted, and that the benefits of the Compensation Act accrue to any person injured, or the dependents of any person killed, while doing work, under contract, at such place, which is necessary to and a part of the operation of such employer's usual business at such place".

In the Potashnick case, the court held that, in order for the *premises* to be *under the exclusive control of the employer*, the *premises* must be such that the public does not have an equal right to use them along with the independent contractor or his employees. In distiguishing other cases the court said, 350 Mo. 858, 169 S.W.2d 62: "In other cases cited, the principal employer, sought to be held, did have *exclusive control* of. the premises, where the independent contractor was working, *by lease* or *other arrangement* with the owner of lands not being used for any public

purpose; and he was not an invitee only * * * on the business premises of another as in this case". (Italics ours.)

Certain evidence relating to this question is considered. Mr. Duncan, President of the Log Company, was asked:

"Q. What business is that company engaged in? A. Buying walnut timber and fabricating lumber * * *.

"Q. The trees he (Eldon Baker) could buy, he would draw a draft on the Iowa-Missouri Walnut Log Company and you would honor it? A. For the buying of the timber.

"Q. And when you honored that draft you considered them as your trees? A. That's right.

"Q. So, it was your trees that he was logging * * *? A. It was our timber. * * *

"Q. And after having purchased the lumber (trees) from the farmer, what did he (Eldon Baker) do with it? A. Cut it and put it to the railroad.

"Q. How was Eldon Baker paid by you for this operation? A. He was paid, I think $45 a thousand.

"Q. Just explain what you mean by that, and what that. $45 would cover. A. It would cover for the cutting and hauling; and in addition to that, we furnished the truck and the tractor, for which I think we either depreciated $5 a thousand—and I am not sure whether we charged him for that $5 a thousand or not."

Helen Kadera, secretary of the Log Company, testified:

"Q. Can you tell me the usual and ordinary and customary business of this Iowa and Missouri Walnut Company? * * * A. Manufacturing gun stocks and lumber.

"Q. Does the Company go out and buy logs for the manufacture of this business? A. Yes.

"Q. And you buy these logs and have them cut up and then shipped to your factory and the buying and shipping of the logs is part of the ordinary business, isn't it? A. That is right."

Eldon Baker was asked:

"Q. Directing your attention to the use of the truck: what was the arrangement on that? A. Well, at that time, I think, they furnished the trucks and they took out $5 per thousand for the operation of it, or I mean take that off our payment of it.

"Q. In other words, you paid the Iowa-Missouri Log Company $5 per thousand for the use of their truck? A. I suppose you would call it that. I don't know what else. * * *

"Q. Who owned the trees that you worked on? A. Iowa-Missouri Company.

"Q. Who owned all the equipment? A. The logging company. * * *

"Q. When you were digging the trees out of the ground, who would tell you how much you were to get for digging those trees? A. The company."

It seems clear that a part of the "usual business" of the Log Company was buying timber and having the same cut into logs and delivered at a designated point for transportation to its plant in St. Joseph where it would be fabricated into lumber or gun stocks. Part of the work necessary to be done was to cut the timber and then prepare it for transportation to the plant, and this was done by an independent contractor. The final step was the fabrication of the logs and the stumps into lumber and gun stocks. This was done at the plant in St. Joseph, in which process the independent contractor had no part.

From this evidence we conclude that the Log Company was having "work done under contract" in an operation of its "usual business". The perplexing question is whether or not this work was being done "on or above his (Log Company's) prem-ises", as the term "premises" has been defined in the above cited cases and others to be noted.

The Log Company contends that this question is settled by the cases of State ex rel. Potashnick v. Fullbright, supra, Sargent v. Clements, supra, and Rutherford v. Tobin Quarries, Inc., 336 Mo. 1171, 82 S.W.2d 918. The facts in those cases are unlike the facts in the instant case, but all three of them point out that before an employer can be held liable under Section 287.040, he must have *exclusive control* of the *premises* where the work is being done. As we view the record in the instant case, that is the vital question to be decided.

In Simpson v. New Madrid Stave Co., 227 Mo.App. 331, 52 S.W.2d 615, the Springfield Court of Appeals held, under a set of facts almost identical with the facts in the instant case, that the stave company was liable under what is now Section 287.040 to the independent contractor who was killed while cutting timber owned by the stave company. The definition of "premises" given in that case is probably too broad in view of the more recent definitions found in the cases cited supra, but it does not necessarily follow that the opinion is wrong. In fact, it is cited with approval by the Supreme Court in Sargent v. Clements, supra, 337 Mo. 1127, 88 S.W.2d 178.

In Crabtree v. Ramsey, Mo.App., 115 S.W.2d 14, 15, the court was discussing a case where an independent contractor was cutting timber, belonging to an alleged employer, when injured. The contract of sale of the timber specifically gave the purchaser (employer) the "full, free and uninterrupted egress and ingress in, over and upon said lands for the purpose of cutting and removing said timber, and on, over and across said lands for the purpose of transporting or hauling said timber * * *." In defining the phrase " 'premises of the employer' ", the court said, 115 S.W.2d 16: "it appears to us that in order for an injury to be considered as happening on the *premises* of the employer, it must have occurred on property *owned, leased,* or *controlled* by the employer, and so connected with the

business in which the employee is engaged as to form a component or integral part of it. Fred Crabtree, * * * was cutting timber belonging to Ramsey and Nichols at the time he was injured, and, although Ramsey and Nichols *did not own the land, or have it leased,* they had the *exclusive right* of ingress and egress for the purpose of cutting the timber, converting it into bolts, and transporting the bolts to their plant where they were made into staves. * * * Ramsey and Nichols had *complete control* of the timber land for the purpose of carrying out the usual course of their business in cutting and removing the timber, and they exercised such control uninterrupted and undisturbed until their timber was removed. It is therefore our conclusion that when Fred Crabtree received the injury which resulted in his death he was on the *premises* of Ramsey and Nichols within the meaning of section [now 287.040 supra]". (Italics ours.) This holding is in harmony with the opinion in the Potashnick case, supra.

■ However, the Log Company contends that there is no evidence in this record that it had any rights whatsoever in the McWilliams land; that it had no right of ingress or egress to such land for the purpose of cutting and removing the trees sold. It must be conceded that there is no specific and direct evidence that it acquired any such rights. All that the evidence discloses on that issue is that Eldon Baker orally purchased these walnut trees from McWilliams and paid him therefor by draft drawn on the Log Company. McWilliams had no negotiations with the Log Company and did not affirmatively give *Eldon Baker* or *the Log Company* the right of ingress and egress to cut and remove the trees. But we think such right would be implied and would naturally follow from the contract made by McWilliams. Otherwise, he would be obtaining money on a false premise. Certainly Eldon Baker would not be a trespasser on the McWilliams land; and with equal certainty, it can be said that the *public* would not have equal right to enter the land for the purpose of cutting and removing the trees belonging to the Log Company. Such facts distinguish this case from the holding in State ex rel. Potashnick v. Fullbright, supra, and Sargent v. Clements, supra.

■ All the cases hold that the Workmen's Compensation Act should be liberally construed. It has been definitely declared that the purpose of Section 287.040 is to prevent an employer from avoiding liability for accidents occurring in the course of the operation of his usual business by resorting to the fiction of contracting for the doing of his work with persons without financial responsibility. Gholson v. Scott, Mo.App., 130 S.W.2d 216, 219.

■ We are of the opinion that, when the whole record is considered, there is substantial evidence to support the finding of the Commission that claimant, *Earl Baker,* was a statutory employee as defined by Section 287.040, and as it has been construed by the appellate courts.

There being no question raised on appeal concerning the injuries received by Earl Baker, or the amount of the award, we need not discuss those matters.

From what we have said, it follows that the judgment of the circuit court must be reversed and the cause remanded with directions to affirm the award of the Commission.

All concur.