Lawrence THIEME, Appellant,

v.

TOUR–TOISESHELL, INC., Respondent.

No. 64832.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 6, 1994.

Jerome T. Bollato, Bartley, Goffstein, Bollato & Lange, Clayton, for appellant.

Terrance J. Good, Carolyn M. Kopsky, Lashly & Baer, P.C., St. Louis, for respondent.

SIMON, Judge.

Plaintiff, Lawrence Thieme, appeals from the trial court's granting of a motion for judgment notwithstanding the verdict (J.N.O.V.) by defendant, Tour–Toiseshell, Inc., following a jury verdict against defendant for damages in the amount of $100,-000.00. Plaintiff brought a claim against defendant, a New York corporation, for injuries he sustained when a box being loaded onto a truck fell and struck him on the head. His sole point on appeal is that the trial court erred in finding that he was a "statutory employee" of defendant at the time he was injured, thereby limiting him to his remedy under the Workers' Compensation Act. We reverse and remand with directions.

We will affirm the entry of a J.N.O.V. only when all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against the plaintiff's case that there is no room for reasonable minds to differ and if the defendant was entitled to judgment as a matter of law. *Rhodes v. Marsh,* 807 S.W.2d 222, 222[1] (Mo.App.1991). A defendant's motion for J.N.O.V. should be granted only where the plaintiff failed to make a submissible case. *McCulley v. State Farm Mut. Auto. Ins. Co.,* 668 S.W.2d 121, 122[2] (Mo.App.1984). In deciding whether the plaintiff, who obtained a jury verdict, made a submissible case, we view the evidence in a light most favorable to the plaintiff, giving him the benefit of all reasonable inferences. *Bizzle v. Enterprise Leasing,* 741 S.W.2d 84, 85[1] (Mo.App.1987).

The evidence in the light most favorable to the verdict is as follows: Plaintiff, a permanent employee of a St. Louis television station, was working as a part-time stagehand laborer at Kiel Auditorium in the City of St. Louis (City) on November 4, 1990. He was assisting in the breakdown and removal of equipment from a Teenage Mutant Ninja Turtles show operated by defendant. Plaintiff was affiliated with a local stagehand union, which often recommended him for work. He testified that he had worked as a stagehand at Kiel "probably hundreds of times." Each time, plaintiff reported to a supervisor who was a City employee, was paid each time with a check from the City, and he identified the City as his employer on tax returns. On this occasion, defendant and the City had entered into a contractual agreement (Kiel Rental Agreement) for use of the auditorium. Pursuant to the Kiel Rental Agreement, defendant paid for all non-custodial labor by reimbursing the City from ticket receipts, which was the method used by other tenants. Paragraph EIGHTH of the Kiel Rental Agreement provided:

(13) [Defendant] agrees, that should it be necessary to employ any help or labor, other than that specified herein, [defendant] will employ and pay for such help or labor, and such help or labor shall be

members of the recognized unions who have jurisdiction over such help or labor.

The union's business agent called plaintiff and asked him to work at Kiel on the evening of November 4. Plaintiff agreed, and he reported that evening to a supervisor, a City employee, who told plaintiff that he was to assist in loading equipment onto trucks. Plaintiff then went to Ramp 6, located at 15th Street, where he began taking items from other members of the stage crew and loading them onto the trucks.

As he was working, plaintiff was standing on 15th Street just off the curb, approximately two feet from the truck he was loading. Although no pedestrians were in the area at the time plaintiff was injured, two of his co-workers explained in their testimony that "it was late" and "it was raining and ... cold." There was no evidence that the street was cordoned off in any way. Plaintiff's injury occurred when a large box fell as it was being pushed onto the truck. The box struck him on the head, causing injuries to his head, neck, and back.

Plaintiff subsequently filed an action against defendant, alleging that defendant negligently caused plaintiff's injuries and resulting loss of income. Defendant moved for summary judgment on March 13, 1992, contending that, pursuant to the Kiel Rental Agreement, defendant was the true employer of plaintiff. Therefore, defendant argued, under the borrowed servant doctrine, plaintiff's exclusive remedy against defendant was that provided by the Workers' Compensation Act and there was no genuine issue of material fact to be decided. Defendant's motion for summary judgment was denied. On August 18, 1992, defendant filed an amended motion for summary judgment, again alleging that plaintiff was limited to the remedy under the Workers' Compensation Act, but on the alternative grounds that plaintiff was either a borrowed servant or a statutory employee of defendant. The record does not reflect the court's ruling on the amended motion.

At trial, the jury received the following pertinent instructions:

### INSTRUCTION NO. 7

Your verdict must be for plaintiff if you believe:

First, plaintiff was an employee of the City of St. Louis at the time of the occurrence mentioned in the evidence, and

Second, defendant caused the box to fall from the fork lift and strike plaintiff, and

Third, defendant was thereby negligent, and

Fourth, as a direct result of such negligence plaintiff sustained damage[,]

Unless you believe plaintiff is not entitled to recover by reason of Instruction Number 8 or Instruction Number 9.

### INSTRUCTION NO. 8

Your verdict must be for Defendant if you believe:

First, Plaintiff consented to work for the Defendant Tour–Toiseshell, Inc.; and

Second, pursuant to an express or implied contract, plaintiff actually commenced upon the work of Defendant Tour–Toiseshell, Inc.; and

Third, Defendant Tour–Toiseshell, Inc. controlled the details of the work to be performed and how the actual work was to be done.

### INSTRUCTION NO. 9

Your verdict must be for Defendant if you believe:

First, the work performed by Mr. Thieme was performed pursuant to contract; and

Second, the accident occurred on or about premises owned by or leased to Defendant; and

Third, the work which Plaintiff was engaged in at the time he was hurt was work being done in the usual course of Defendant's business.

The jury returned its verdict in favor of plaintiff. Defendant's motion for J.N.O.V. on the ground that plaintiff was a statutory employee of defendant was granted. This appeal followed.

The dispositive issue is whether plaintiff was a "statutory employee" of defendant under the provisions of § 287.040.1, R.S.Mo. 1986 (all further statutory citations shall be to R.S.Mo.1986 unless otherwise noted). Initially, we note that the circuit court had jurisdiction to decide the issue. Our Supreme Court has stated:

[A] circuit court may decide whether plaintiff was an employee when injured but ... the primary jurisdiction doctrine will be applied where questions involve "administrative expertise, technical factual situations and regulatory systems in which uniformity of administration is essential." [*Lamar v. Ford Motor Co.*, 409 S.W.2d 100, 107[3] (Mo.1966).]

\* \* \* \* \* \*

[A] circuit court may determine whether plaintiff was an "employee" ... but may not determine whether there was an "accident arising out of and in the course of \* \* \* employment[.]" [§ 287.120.]

\* \* \* \* \* \*

[A] defendant may assert by motion or answer that the [trial] court lacks jurisdiction of the subject matter because plaintiff was an employee when injured. Rule 55.27. The court may hear the matter in the manner permitted in Rule 55.28. If the court rules it has jurisdiction, the parties may proceed to trial. If the court rules it lacks jurisdiction, plaintiff may appeal.

*Jones v. Jay Truck Driver Training Ctr.*, 709 S.W.2d 114, 115–16 (Mo. banc 1986).

■ To categorize an individual as a statutory employee, three elements must be established: (1) the work was being performed pursuant to a contract; (2) the injury occurred on or about the premises of the alleged statutory employer; and (3) when injured, the alleged statutory employee was performing work that was in the usual course of business of the alleged statutory employer. *Heller v. Aldi, Inc.*, 851 S.W.2d 82, 84[5] (Mo.App.E.D.1993).

■ On appeal, elements (1) and (3) are not disputed; only the second element, that is, whether the injury occurred "on or about

the premises" of defendant, is being contested by the parties. Our Supreme Court has defined "premises" as "any place, *under the exclusive control of the employer,* where the employer's usual business is being carried on or conducted...." *State ex·rel. Potashnick v. Fulbright,* 350 Mo. 858, 169 S.W.2d 59, 61[2] (1943) (emphasis in original) (quoting *Sargent v. Clements,* 337 Mo. 1127, 88 S.W.2d 174, 178[5] (1935)). "[T]he 'premises' of the statutory employer is any place where, in the usual operation of his business, it is necessary for those whom he has employed to do the work to be while doing it." *Wilson v. Altruk Freight Systems, Inc.,* 820 S.W.2d 717, 723[10] (Mo.App.1991).

In *Bullock v. Potashnick,* 237 Mo.App. 665, 162 S.W.2d 607 (1942), the plaintiff, Bullock, was injured while working in a railroad yard unloading utility poles. Potashnick, the defendant, had entered into a contract to erect power lines. *Id.* 162 S.W.2d at 608. The utility poles were delivered by train to a railroad yard some distance from their ultimate destination, and Potashnick hired Watkins to haul the utility poles from the railroad yard to the construction site. *Id.* at 608–09. Watkins hired Bullock to assist in the unloading and transportation of the poles, during which he was injured. *Id.*

Bullock filed a claim for compensation from Potashnick with the Workmen's (now Workers') Compensation Commission. The Commission awarded Bullock compensation, and the trial court affirmed the award. *Id.* at 608. The Court of Appeals affirmed the trial court, holding that Bullock was entitled to workers' compensation from Potashnick because Potashnick "appropriate[d] the premises to his use for the specific purpose [of unloading] with the permission, consent and acquiescence of the railroad company[.]" *Id.* at 610[3]. In a subsequent certiorari proceeding, *State ex rel. Potashnick v. Fulbright,* 350 Mo. 858, 169 S.W.2d 59 (1943), our Supreme Court reversed the Court of Appeals' opinion, on the ground that the defendant did not have exclusive control of the railroad yard:

The Court of Appeals recognizes that Potashnick could be no more than an invitee on the premises of the railroad, but

rules that such an invitee "has exclusive control of the car and the grounds contiguous thereto necessary for the process of unloading" but that he is nevertheless subject to interruption and disturbance for the convenience of the railroad company in the transaction of its business there. Certainly that is not actually exclusive control as required by our decision in [*Sargent, supra*]. Surely it is contrary to many of our rulings defining the rights of an invitee (as not extending beyond the terms of his invitation) to say that he has exclusive possession of the premises to which he is invited for business purposes. Certainly [Potashnick's] invitation to unload goods from a car consigned to him is not to take exclusive control of any part of the station railroad yards of a common carrier where many other people are likewise entitled to come as similar invitees at all times. Potashnick did not have a private unloading yard, and there is nothing here to indicate that any two cars, delivered at different times, would even be at the same place for unloading in the yards. If Section 3698(a) [R.S.Mo.1939, now § 287.040.1] can be construed to cover this situation, then it would seem that any independent drayman going upon railroad grounds to deliver goods to a merchant would be under the act, as working on or about the merchant's premises.

*Fulbright,* 169 S.W.2d at 62[3] (citations omitted). Like the railroad yard in *Bullock* and *Fulbright,* 15th Street was not under defendant's exclusive control such that it was not accessible to other persons. There was no evidence that the public was prevented from walking or driving on 15th Street in the loading area, and two witnesses testified that the absence of pedestrians in the vicinity was "because it was late" and "it was raining and . . . cold" rather than any restriction on their freedom to enter the area. Further, paragraph EIGHT, part (10) of the Kiel Rental Agreement expressly prohibited defendant from restricting public access to the area: "All portions of the sidewalks, entries, passages, vestibules, halls, elevators, and all ways of access to public utilities of the premises shall not be obstructed, or caused to be obstructed, by [defendant] or used for any

purpose other than ingress or egress, to and from the premises."

■ If the facts are undisputed and no doubt exists, the court may declare the issue as a matter of law. *Brown v. Gamble Const., Inc.,* 537 S.W.2d 685, 689[8] (Mo.App.1976). In *Brown,* we held that the plaintiff was a statutory employee as a matter of law because the parties did not dispute the material facts. *Id.* Here, however, the trial court erred because, unlike *Brown,* a critical fact is disputed: whether plaintiff was a statutory employee of defendant, which depends upon the extent of control by defendant over the premises. By finding for plaintiff, the jury necessarily concluded that plaintiff was employed by the City when he was injured, as submitted in Instruction No. 7, and his injury did not occur "on or about premises owned by or leased to Defendant," as submitted in Instruction No. 9.

We also addressed the difference between questions of fact and law in *Sippel v. Custom Craft Tile, Inc.,* 480 S.W.2d 87 (Mo.App. 1972). In *Sippel,* a truck driver was injured while delivering and unloading rolls of carpeting at Custom Craft's (Custom) place of business. He filed a personal injury action against Custom after receiving a cash settlement from his employer, the trucking company, for his workers' compensation claim. He secured a jury verdict against Custom for $25,000.00, but the trial court granted defendant's motion for a new trial, whereupon he appealed.

In response to his appeal, Custom contended that he was its statutory employee and that the trial court should have directed a verdict for Custom at the close of all the evidence. *Id.* at 89[1]. Quoting our Supreme Court's opinion in *Walton v. United States Steel Corp.,* 362 S.W.2d 617, 622[4] (Mo.1962), we stated in *Sippel* that "under the evidence [in *Walton* ], 'the issue presented a question of fact which it was appropriate for the jury to decide and hence the [*Walton* trial] court properly overruled defendant's motion for a directed verdict.'" *Sippel,* 480 S.W.2d at 90–91[3].

In both *Walton* and *Sippel* the dispute centered on the third element of the statutory employee definition, specifically, whether

the respective plaintiff truck drivers' "usual course of business" included loading and unloading cargo. Although the issue before us involves the second element of the statutory employee definition rather than the third, the legal principle remains the same. Determination of one's status as a statutory employee is a question of law only where the facts are undisputed. *See Wallace v. Porter DeWitt Const. Co.*, 476 S.W.2d 129, 130[1] (Mo.App. 1971). That is not the situation here.

Like the directed verdicts in *Walton* and *Sippel,* a J.N.O.V. is a drastic action and should be granted only when reasonable persons would not differ on the correct disposition of the case. *Marti v. Economy Fire & Casualty Co.*, 761 S.W.2d 254, 255[1] (Mo. App.1988). We conclude that reasonable persons could differ as to whether plaintiff was a statutory employee of defendant, making the dispute a fact issue for the jury to decide. Therefore, the J.N.O.V. in favor of defendant was improper. The judgment is reversed and remanded with directions to the trial court to enter judgment for plaintiff in accordance with the jury's verdict.

AHRENS, P.J., and KAROHL, JJ., concur.