Raymond E. SNETHEN, Claimant-Appellant,

v.

AMERICAN COMPRESSED STEEL, Inc., and Bituminous Casualty Corporation, Respondents,

and

Marshall Crose, d/b/a Marshall Crose Scrap Iron Company, Employer.

No. 22049.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1954.

Marcy K. Brown Jr., Ben E. Pener, Kansas City, for appellant.

Clyde J. Linde, Billy S. Sparks, Kansas City, Langworthy, Matz & Linde, Kansas City, of counsel, for respondents.

SPERRY, Commissioner.

This is an appeal by Raymond E. Snethen, plaintiff from a circuit court judgment affirming an award by the Industrial Commission denying him compensation for injuries received while allegedly employed by American Compressed Steel, Inc.

Defendant, American Compressed Steel, Inc., was at all times herein mentioned, engaged in buying, processing, and selling scrap steel and cast iron, at its place of business, at 407 Liberty, Kansas City, Missouri. Plaintiff was injured while dynamiting an old rock crusher, at Garnett, Kansas, that was being junked and delivered to defendant.

Plaintiff testified to the effect that Marshall Crose, in 1947, owned and operated a junk yard at Appleton City, Missouri; that plaintiff was employed by Crose, at that place, for a time; that plaintiff ceased working for Crose and was employed at an elevator in Appleton City, Missouri, in 1948, when an employee of Crose drove a rented pickup truck from Kansas City to Appleton City and requested that plaintiff come to Kansas City to see Crose about a job; that plaintiff drove the truck back to Crose's home in Kansas City, where they talked; that, next day, Crose and plaintiff drove to defendant's place of business and talked to Everett Rust, defendant's foreman; that Rust and Crose said: "We have some stuff (meaning junk iron and steel) at Columbia"; that the three went to Garrett rock crusher at Columbia, where they looked at some junk; that Rust "told I and Marshall to go down and wreck that and haul it in"; that Crose gave Garrett a check, which looked like defendant's check; that they returned to Kansas City; that, next morning, plaintiff went with Crose, in his truck, to defendant's place; that Rust weighed it, they got some tools and some gas for the cutting torch, and drove to Columbia; that Mr. Byer, defendant's manager, was present when the truck was weighed; that Rust came to Columbia the first day; that Rust said that plaintiff would be paid 50¢ per ton for cast and 25¢ for steel that was prepared; that they cut up old trucks and other junk and hauled it to defendant, where it was weighed and unloaded; that Rust came to Columbia a few times while the work was being done, and brought supplies; that he instructed as to size of pieces to be cut; that Byer would pay plaintiff once a week when he was there, otherwise he gave the money to Crose, who paid plaintiff; that he was paid $20 to $30 per week, according to tonnage; that Social Security payments were deducted; that after the Columbia job was finished he and Crose hauled junk, in Crose's truck, for defendant; that he was instructed as to what to do by Rust and Crose; that he worked in the yard at times when not otherwise employed, and was paid by Byer and Crose at the rate of $4 per day; that Rust and Crose told him "We bought" a rock crusher at Garnett, Kansas, and want to move it up

for defendant; that plaintiff, Crose, and one Carter weighed Crose's truck, picked up tools and supplies, and went to Garnett, Kansas, where they worked for about two months; that Crose took the workmen down and worked with them; that they would bring back junk, which would be unloaded by defendant's magnetic crane, under Rust's directions; that he was paid by Crose and Byer, in currency, sometimes one would pay, sometimes the other; that Rust came to Garnett several times in defendant's pickup truck and brought supplies; that he would give instructions as to the work; that after that work was finished he went to Kansas City and worked, as before, with Crose, hauling for defendant, and in defendant's yard, cleaning junk; that he was paid by Byer according to the work done; that, after a few weeks, he went back to Garnett to finish cleaning up the junk there; that Crose and Byer told him to go down there for that work; that he worked, at that time, for about a month, and was injured during the latter part of August, 1949, while on the job; that he was paid alternately by Crose and Byer, from $30 to $40 per week, by whichever one he happened to see. Plaintiff stated that he heard Crose and Byer talk about Byer having loaned Crose money to purchase the truck used by Crose in hauling scrap. No income tax was ever deducted from plaintiff's pay.

Clyde Spruell, plaintiff's brother-in-law, worked at preparing scrap, at Garnett and was paid by Crose, sometimes and, at others, by Byer. Social Security was deducted. He was not working on the project when plaintiff was injured, but had worked there prior to plaintiff's employment.

Mr. Conway, secretary of a truck leasing concern, stated that his company made truck rentals to Crose by Rust, to Rust by Crose, and 29 rentals to Crose, for which plaintiff signed for six. One rental was made to D. F. Carter for defendant.

Mr. Crose testified to the effect that he bought scrap iron, and processed and sold it for a profit; that he had a truck in which he hauled iron; that Byer had helped him to finance the truck; that no other company or person had any interest in the business which he carried on; that he hired men to help him; that they shared profits with him, after deducting truck and other expenses; that plaintiff was Crose's employee at the time he was injured, but worked for defendant in its yards, when Crose had nothing for him to do; that Crose sometimes hauled iron for defendant, for hire working by the ton; that, on the Garnett job, he was operating on his own and defendant had no interest in the operation other than that Byer had advanced money to Crose to deposit on the scrap before operations began; that said "advance" was repaid by delivering scrap to defendant from the Garnett job; that Rust sometimes cut in with Crose for a share of profit. Crose was working at another scrap yard at the time of the hearing before the referee.

Mr. Reiz, bookkeeper for defendant, testified to the effect that defendant hired no haulers, but contracted its trucking on the basis of ton miles; that defendant owned no trucks and bought junk from others over the scales at its yard; that defendant would sort, process, and sell said junk to its customers.

Mr. Byer testified to the effect that plaintiff was never an employee of defendant, except when Crose had nothing for him to do, when he worked in the yard cleaning metal; that there never was an account on defendant's books for plaintiff or Crose as employees; that he loaned Crose $5,000 to pay for the first batch of scrap at the Garnett rock crusher; that Crose was to sell such scrap to defendant, over the scales, at market prices; that he later advanced him $1,000 to buy more scrap at the Garnett crusher; that Crose would bring the scrap in to defendant's yard and would receive some cash, and was credited for the balance on the "advance"; that, at the time the hearing was conducted, Crose owed defendant more than $700 on his book account; that, occasionally, Crose did trucking for defend-

ant and was paid on a ton mile basis; that Crose was never authorized to rent a truck for defendant nor was he ever told what employees to hire; that he hired and paid his own help.

Mr. Brosnahan was the owner of the Garnett rock crusher. He stated that he had some outmoded machinery and equipment; that Crose approached him to buy it for junk; that he dealt with Crose, who deposited $5000 cash on the deal; that Crose and his employees broke up and removed the junk; that, thereafter, he sold him some more junk, Crose having deposited $1000 on that deal; that he never dealt with anyone on the junk except Crose, who told him that he was selling the junk to defendant; that he never met Byer or Rust; that he gave permission to Crose to enter the premises for the purpose of removing the junk.

The case was heard by a referee for the Industrial Commission, who found for plaintiff and made an award in his favor and against defendant herein. Upon appeal to the whole Commission the findings and award were for defendant. The case was remanded to the Commission for more specific findings and the Commission found:

1. That plaintiff was an employee of Marshall Crose, when he was injured, and that Crose was not operating under the Workmen's Compensation Law.

2. That plaintiff was not, at the time of his injury, a direct or actual employee of defendant; that plaintiff was not a statutory employee of defendant under the provisions of Section 287.040 RSMo 1949, V.A.M.S.; that, at the time of plaintiff's injury, Marshall Crose and defendant were not engaged in a joint venture; that plaintiff was not a "borrowed servant" from Marshall Crose, d/b/a Marshall Crose Scrap Iron Company; and denied compensation.

From that award plaintiff appealed to circuit court, where the award was affirmed. This appeal followed.

In reviewing an award by the Industrial Commission the court is limited to a determination of whether the Commission could have reasonably made its findings and reached its results upon consideration of all of the evidence before it; and it may set aside decisions only when clearly contrary to the overwhelming weight of the evidence. Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W. 2d 136, 141. The fact that the referee, who saw and heard the witnesses found for plaintiff, and that the whole Commission, who only reviewed the record, reversed his findings and award and found for defendant, does not change the above rule, for it is the award of the Commission that we are reviewing. Michler v. Krey Packing Co., supra, 253 S.W.2d 140; Woodward v. J. J. Grier Co., Mo.App., 270 S.W.2d 155.

The Commission's first finding was that plaintiff was an employee of Marshall Crose. Such finding is solidly supported by the testimony of Crose, and by the relationship shown to have existed between Crose and plaintiff, as well as by other facts and circumstances in evidence. Certainly we cannot say that the Commission could not reasonably have made such a finding on the whole record.

The Commission also found that plaintiff was not a direct or actual employee of defendant. Plaintiff gave no direct testimony contrary to that finding. Byer denied that plaintiff had ever worked for defendant except occasionally in the yard. The records of defendant did not show that plaintiff was an employee of defendant, and Crose testified positively to the effect that plaintiff was his own employee. Crose stated that defendant had nothing to say as to whom Crose employed, what he paid his employees, or what they did. On the whole record we cannot hold the finding to be contrary to the overwhelming weight of the evidence. Indeed, such finding seems to be well supported by the evidence.

■ The Commission found that plaintiff was not a statutory employee of defendant under the provisions of Section 287.040 RSMo 1949, V.A.M.S. This court recently had occasion to discuss and apply the above statute in Baker v. Iowa-Missouri Walnut Log Co., Inc., Mo.App., 270 S.W.2d 73. We there said that the *essential* elements constituting a statutory employee are: "(1) Work done under contract; (2) on or about the premises of employer; and, (3) in an operation of the usual business which he (the employer) there carries on.

All of the positive testimony in this case is to the effect that defendant had not contracted with Crose or anyone else for the breaking up and transportation of junk at the Garnett rock crusher. Crose said he drove by the crusher, saw it, and negotiated for its purchase; that he sought and obtained $5,000 from defendant, or from Byer, with which to pay for the junk; that he was to repay this "advance" by selling the junk to defendant over the scales, at market price. Byer corroborated Crose's testimony in this respect. Defendant's books and records also tended, generally, to corroborate Crose and Byer as to their method of doing business. Brosnahan, owner of the rock quarry, stated that he dealt with Crose, who paid him on the first, the $5,000 deal, and again, on the second, $1,000 deal, which is the one plaintiff was working on when injured. Brosnahan stated that he had no dealings with defendant, but that he gave Crose, alone, permission to enter and remove the junk.

For the Commission to have found that defendant was having work done at Garnett, on contract, it must have disbelieved all the positive testimony in the case, and have based its findings on rather vague, inconclusive circumstantial evidence. The same is true as to the essential finding that the injury occurred on defendant's premises, or on premises under its exclusive control. All of the positive evidence is to the effect that defendant had no right of entry or control over said premises.

True, there may have been false testimony; but we cannot say that the Commission's finding to the effect that plaintiff was not a statutory employee is clearly contrary to the overwhelming weight of the evidence.

■ The Commission found that defendant and Crose were not engaged in a joint enterprise when the accident occurred. There was some evidence tending to indicate the carrying on of a joint enterprise. However, such evidence is far from conclusive. The Commission saw fit to believe the testimony of Crose, Byer, and Brosnahan, and to disregard such circumstances as may have tended to conflict therewith. We cannot substitute our judgment for theirs, nor can we say that the result reached is contrary to the overwhelming weight of the evidence.

The Commission found that plaintiff was not a borrowed employee. Such finding is in harmony with certain evidence, heretofore mentioned which, apparently, the Commission believed and acted upon. For reasons heretofore stated we have no authority, on the record before us, to disturb that finding.

Considering the whole record, the judgment of the circuit court should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.