Raymond KIRCH, Plaintiff,

v.

SHEFFIELD STEEL DIVISION, INC. and Armco Steel Corporation, Inc., Defendants.

No. 11357.

United States District Court
W. D. Missouri, W. D.
June 18, 1959.

Ben E. Pener, Ray D. Jones, Jr., Kansas City, Mo., for plaintiff.

Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., for defendants.

**R. JASPER SMITH, District Judge.**

This is an action in common law negligence for personal injury. Trial by jury resulted in a verdict for plaintiff of $25,000. Defendant's post-trial motions seek judgment in accordance with its motion for directed verdict on the grounds: (1) That plaintiff was a "statutory employee" of Armco Steel Corporation within the terms of Section 287.040, V.A.M.S., and that plaintiff's sole right against defendant is under the Missouri Workmen's Compensation Law, Chapter 287, V.A.M.S.; (2) that there is insufficient evidence to establish negligence on the part of Armco Steel; and (3) that there was insufficient evidence to establish the essential elements of a res ipsa loquitur submission. In the alternative a new trial is requested.

On June 21, 1954, plaintiff was employed by the S. Patti Construction Company as an ironworker. Defendant Armco Steel Corporation operates its Sheffield Division in Kansas City, Missouri, where it is engaged in the manufacture of steel products.

Plaintiff was injured while working on the premises of the defendant. At that time Patti Construction Company was working on the enlargement of a blooming mill. Plaintiff and one Stine, an ironworker superintendent for Patti, had gone from the blooming mill, the immediate site of construction, to a "Building 12" to get several pieces of machinery that were needed. Building 12 at that time was being used as a special warehouse for storing material and equipment. They located the machinery, and plaintiff was in the process of prying it up with a pinch bar in order to put a cable under it for loading purposes when a heavy machinery guard which was stored in the warehouse toppled over and struck him on the foot.

The Sheffield Plant is a large facility. At least since 1942, a continual process of enlargement, alteration, repair and remodeling has been conducted there. Patti has worked continuously at Sheffield since shortly after World War II. The projects varied from time to time. Some of the work was of a nature that could be denominated as maintenance, while some was completely new construction. In June, 1954, Patti had some sixty to seventy employees of various crafts working at the plant. Armco had men of the same crafts and they worked together on the same jobs in many instances.

The working relationship between Patti and Armco was very close. Evidence indicated that Patti operated almost as a department of Armco; and that it functioned with its organization as a supplement to the steel plant. The work required of Patti was written up on a work order form identical to that used by departments of Armco. Although there were other contractors periodically working at the plant, Patti was the only one with which the work order system was followed. Under these work orders Patti did any type of work it was called upon to perform, either maintenance, new construction or replacement. Armco com-

pensated Patti monthly for all work done on a cost of operation plus percentage basis.

The particular project involved here was the modernization of an old billet mill. One side of this mill remained in operation while the other side was torn out to install a blooming mill. The purpose was to increase production facilities. The work was in close proximity to the production line which remained operating, necessitating close coordination. Armco employees tore out and removed the old equipment while Patti men constructed walls, footings and foundations, and set the new machines. The project engineer for Armco was in charge of the construction, and supervised the installation of the new equipment.

Plaintiff has been paid benefits under the Missouri Workmen's Compensation Act. The initial question is whether plaintiff was a "statutory employee" within the meaning of Section 287.040, supra. The portion of that statute material for present purposes is:

"287.040. *Liability of employer-landlords, contractors, subcontractors.*

"1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

\* \* \* \* \* \*

"3. The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work."

If under controlling Missouri law plaintiff was a "statutory employee" of Armco Steel Corporation, his exclusive remedy is under the Workmen's Compensation Act and all rights to relief arising out of his injury which he might have had at common law are barred. Section 287.-120, subd. 2, V.A.M.S.; Montgomery v. Mine La Motte Corporation, Mo.1957, 304 S.W.2d 885; Shafer v. Southwestern Bell Telephone Co., Mo.1956, 295 S.W.2d 109; Dixon v. General Grocery Co., Mo.1956, 293 S.W.2d 415; Jones v. Lily Tulip Cup Corporation, D.C.W.D.Mo.1958, 158 F. Supp. 944.

One test frequently used by Missouri courts is as follows: "If the work being done at the time of injury is not an operation of, or in the usual course of, the business which the employer customarily carries on upon his premises but is only incidental, ancillary, or auxiliary thereto, then the contractor, subcontractor, or his employee who is injured while engaged in such character of work is not a 'statutory employee' within the meaning of the act, and the owner or occupant of the premises having the work done under contract is not to be deemed the employer of such injured party for the purpose of having liability cast upon him under the provisions of the act." Perrin v. American Theatrical Co., 1944, 352 Mo. 484, 178 S.W.2d 332, 334. See also State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 1945, 354 Mo. 97, 188 S.W.2d 838; Rucker v. Blanke Baer Extract & Preserving Co., Mo.App.1942, 162 S.W.2d 345; Morehead v. Grigsby, 1939, 234 Mo.App. 426, 132 S.W.2d 237.

It is elemental that the conditions enumerated by Section 287.040, subd. 1 must exist; i. e., the work must be under contract, on or about the premises of the purported employer, and the work being performed at the time of the injury must be in the usual course of business which is there carried on. Shafer v. Southwestern Bell Telephone Co, supra; Snethen v. American Compressed Steel, Mo.App.1954, 272 S.W.2d 850;

**224**

Baker v. Iowa-Missouri Walnut Log Co., Mo.App.1954, 270 S.W.2d 73. There is no question here that the work in which plaintiff was engaged was under contract and was being performed on defendant's premises. The issue disputed is whether under existing law the work being performed was in the course of the usual business carried on at the Sheffield Plant. In its final analysis each case of this nature presents a question of fact. Wooten v. Youthcraft Manufacturing Co., Mo. 1958, 312 S.W.2d 1; Viselli v. Missouri Theatre Bldg. Corp., 1950, 361 Mo. 280, 234 S.W.2d 563; Sargent v. Clements, 1935, 337 Mo. 1127, 88 S.W.2d 174; Sheffield Steel Corp. v. Vance, 8 Cir., 1956, 236 F.2d 928. We must determine the scope of the usual business of the employer and ascertain whether the work being performed by plaintiff at the time of his injury was within the sphere of that activity.

The possible existing relationships within industries subject to the Missouri Workmen's Compensation Law almost approach infinity. This results in a situation where it is possible in cases in which the "usual business" problem has been raised to be definitive perhaps only as to the particular set of facts presented. The specific act which the injured person was performing must be placed in the context of the usual business pursued on the premises. The scope of the usual business of any given employer is a variable. This accounts for the seemingly incongruous result where in two cases of individuals performing basically the same act it is possible for one to be held a statutory employee while the other is not. Compare Viselli v. Missouri Theatre Bldg. Corp., supra, and Dixon v. General Grocery Co., supra. The test given above provides only a general guide. In some instances a sufficiently close precedent exists so that it is possible after a factual analysis to choose a shade from the spectrum of decided case law that most closely corresponds to the problem under consideration. Other cases must proceed on their own ground.

This case is one where there is a closely analogous factual precedent. Defendant consistently has pointed out the similarity in the relationships between Patti and the Sheffield Plant here and the activities carried on in Atlas Powder Co. v. Hanson, 8 Cir., 1943, 136 F.2d 444. The analogy is well taken. Two aspects of the facts are particularly significant. The first is the consistent regularity with which Patti performed work for defendant at its Sheffield Division over a number of years. The second is the close relation—almost integration—of Patti to the working organization of the Steel facility. Modification, modernization, and maintenance were a continuing process at the plant. Obviously, in a large industrial establishment such as Sheffield Steel this type of activity is a necessity. To hold that the scope of the usual business there conducted is limited solely to the manufacture of steel would be illogical. Improvement and repair are an integral part of the process.

The facts do not indicate that the work in which Patti was engaged at the time of plaintiff's injury was a specialized, sporadic maintenance activity. Rather, they demonstrate that the work in which plaintiff was engaged at the time of his injury was an operation of the usual business carried on by defendant at its Sheffield Division within the meaning of Section 287.040, subd. 1, supra. The situation clearly is within the rationale of the Atlas Powder Co. case. Here the relationship was even closer. It had existed for a longer period of time, and was more versatile than the single contract there involved. And to place plaintiff in the category of an employee of Armco Steel Corporation under the Workmen's Compensation Law is entirely consistent with the purpose for which Section 287.040, subd. 1 was enacted. See Eckmayer v. Newport, Mo.App.1954, 267 S.W.2d 379; Rucker v. Blanke Baer Extract & Preserving Co., supra; Kennedy v. J. D. Carson Co., Mo.App.1941, 149 S.W.2d 424.

Plaintiff urges that his common law rights against defendant are not pro-

scribed, since the work being done at the time of his injury was an improvement within the meaning of Section 287.040, subd. 3, supra. The admitted facts disclose a situation clearly within the meaning of subsection 1 of the statute. Under established law subsection 3 is not applicable.

I entertain serious doubt that the essential elements of the res ipsa loquitur doctrine have been proved here. Since plaintiff occupies the position of a "statutory employee" of defendant within the meaning of Section 287.040, subd. 1, supra, and his sole right against Armco Steel Corporation is under the Missouri Workmen's Compensation Law, a consideration of this issue is unnecessary.

The verdict and judgment entered in favor of plaintiff is set aside and the Clerk is directed to enter judgment for defendant Armco Steel Corporation. It is so ordered.