**William T. DAWSON, Employee, Appellant,**

**v.**

**CLARK OIL AND REFINING CORPORA-
TION, Employer, and Royal Indemnity
Company, Insurer, Respondents.**

No. 32464.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1966.

Milton Suffian and Joseph S. Rosenthal, St. Louis, for appellant.

Albert I. Graff, Malcolm I. Frank, St. Louis, Sandor Korein, E. St. Louis, J. J. Zych, St. Louis, for respondents.

WOLFE, Presiding Judge.

This concerns a claim filed before the Division of Workmen's Compensation of the Department of Labor and Industrial Relations of Missouri. The claimant asserted in his claim that he suffered a back injury resulting from an accident that occurred while he was working for the Clark Oil and Refining Corporation. The corporation generally denied the claim and specifically denied that the claimant was an employee. Upon a hearing before the Referee of the Commission there was a finding that the claimant was not an employee and that he suffered no accident. Upon appeal to the full Commission the Commission held that the claimant was not an employee within the meaning of the Workmen's Compensation Law. An appeal was then taken to the Circuit Court where the Commission was affirmed. This was followed by an appeal to this court from the judgment of the Circuit Court.

Dawson, the claimant, started working as an employee of the Clark Oil and Refining Corporation in March of 1958 as a service station attendant. Until May 21, 1962, the claimant worked at various jobs

for the corporation. In January of 1962 he became the manager of a service station operated by the Clark Oil and Refining Corporation at 1700 South Florissant Road in St. Louis County, Missouri. He drew a salary in his position as manager and served in that capacity until May 21, 1962. On that date he leased the station which he had been managing and became a franchised dealer for the Clark Oil and Refining Corporation. The lease provided for a rental in a sum equal to 2.65 cents for each gallon of gasoline sold from the pumps and this sum was payable monthly. The lease also provided that Dawson was free to sell the products of any supplier and that the business of operating the station was under his control.

At the same time the lease was signed a retail dealers consignment agreement was entered into by which the Clark Oil and Refining Corporation agreed to deliver to Dawson gasoline in such quantities as Dawson might from time to time require. Dawson took the gasoline on consignment and agreed to sell it at the prices authorized from time to time by the consignors. Dawson also agreed to operate the station at his own expense, employ his own help, carry the necessary liability insurance, pay taxes required of such an operation including license fees. He was to have as his profit the difference between the retail tax included price and the dealer's tank wagon price, and this differential was never to be less than three cents per gallon. The balance of the consignment agreement dealt with the manner of paying for the gasoline he sold and the manner in which the agreement could be terminated. It provided that the lease could be terminated at the option of the lessor if the station was closed for 48 successive hours.

At the time of the signing of the lease Dawson also bought from the corporation merchandise other than gasoline that it had in stock at the service station and he gave his note for the purchase price. There was a sign above the door of the service station with Dawson's name on it as manager before he signed the lease and this was replaced by a sign with the word "dealer" after his name after the lease was signed. Dawson testified that he ran the station in many respects as he had done when he was manager. The corporation did not want any repair work done at the station or any cars parked there and he said that at the request of the corporation supervisor he allowed no parking of automobiles on the station grounds and did no repair work. Cigarettes had always been sold at the station but the corporation did not supply them after Dawson became dealer and he could buy them from any source and of course the profits on their sale belonged to him as did the profits from the sale of oil.

He said that some flowers planted on the premises died and at the suggestion of the supervisor he bought some more flowers and planted them. Dawson in his income tax return reported his income during the term of his lease as a self-employer.

As to the injury Dawson claimed to have suffered he testified that it occurred when he was helping carry an electric water cooler out of the door of the service station. He said that he slipped and caught the cooler to prevent it from falling and experienced a sharp pain in his back. This occurred on September 6, 1962. He said that he was carrying out the water cooler at the direction of Mr. Duecker who was a supervisor for Clark Oil and Refining Corporation and Mr. Duecker was helping him carry it out. The purpose of taking it out was to clean away, with an air hose, dust and dirt that had accumulated in it.

Dawson went to the hospital four days later because his back bothered him. He gave a history of having hurt his back while mowing the lawn. The doctor who treated him in the hospital and testified as claimant's witness said claimant gave him a history in July, 1964, of having slipped while carrying a water cooler. Dawson had suffered from back trouble as far back as 1947 and had been hospitalized for it before

and after the alleged accident here under consideration. Because of his back he was unable to continue as a dealer for the corporation. He entered an agreement with it on September 29, 1962, surrendering the premises to the corporation and the corporation cancelled his obligations under the lease.

Dawson stated that after he leased the premises and became a dealer the items that he sold on the premises were the same as he had sold before; gasoline, oil and cigarettes. He deposited the corporation's share of the money received from the sale of the gasoline to the account of the corporation. All other receipts were deposited in his own name. The corporation suggested the retail price of the gasoline and he charged the amount the corporation suggested. He did not park cars or repair them on the premises. A salesman for the corporation named Brand and a supervisor named Duecker still called on him at the station. Dawson said that he had to submit the work schedule of his employees to Brand for approval. He stated that one of the employees of the corporation told him to use a certain auditor and that the auditor sent a report to the corporation but that he had never told him to do so. Brand, who was no longer employed by the corporation, was called as a witness for the claimant and upon cross-examination he stated that he did not recall telling Dawson that he had to do anything.

Clark Oil and Refining Corporation called its supervisor named Duecker as a witness. Duecker stated that when a dealer takes over a service station he usually doesn't know too much about business: he needs a bookkeeper and can get one of any number of them. New dealers are told they can hire anyone they want. Many times they have friends who are bookkeepers. He stated that when Dawson leased the station he told him that. Duecker stated that he had never issued specific instructions as to the number of hours a lessee would work and that when a dealer takes over a station he knows that he is going to put in a few more hours than a forty hour week. If a dealer wants to make more money he does this by hiring less help and putting in more hours himself. Neither the corporation or Mr. Duecker hire or fire any employees at a leased station and maintain no records or insurance records for those stations. The corporation does tell the dealers the price of gasoline at company operated stations and suggests that they charge the price, but the dealers make the same amount of profit whether the price of gas is up or down. He exercises no supervisory control over a dealer and does not tell them the standard of cleanliness to maintain.

He stated that he never told Dawson to plant flowers or suggested that he do so or had any conversation with him concerning flowers. He recalled helping carry out the water cooler. He suggested at the time that if Dawson wanted to carry it out he would help him. They carried it out, cleaned out the cobwebs and dust that had gathered there. Dawson never told him of any injury or pain and he was not aware of Dawson slipping or anything else happening while they were carrying the water cooler out.

As above stated, the Referee found that the claimant was not an employee and that he did not sustain the accident alleged. There was ample evidence to support the finding that the claimant did not suffer the alleged accident but we are not concerned with that for upon appeal to the Industrial Commission the Commission found only that claimant was not an employee of the Clark Oil and Refining Corporation within the meaning of the Workmen's Compensation Law. Upon review by the Circuit Court that court affirmed the finding of the Commission. Upon its review it was obliged to determine whether or not upon the whole record the Commission could have reasonably made its finding. Our review on this appeal from the Circuit Court is the same and we may not set aside the Commission's finding unless it is clearly contrary to the overwhelming weight of

the evidence. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292; Brandt v. E. O. Dorsch Electric Company, Mo.App., 400 S. W.2d 452.

The claimant's own testimony was that he was a dealer and that he had leased the premises from the Clark Oil and Refining Corporation. He asserts, that despite this, the landlord exercised sufficient control over the premises and his work to make him an employee under the Workmen's Compensation Law. In a case similar in all pertinent respects to the one here under consideration the Springfield Court of Appeals had this to say, Johnson v. Simpson Oil Company, Mo.App., 394 S.W.2d 91, 1. c. 95:

"[2] Claimant here concedes that he was an independent contractor and not an actual employee of Simpson, but he insists that he was a statutory employee. Section 287.040. The essential elements of statutory employment, as stated in subsection 1 of Section 287.040, are (a) 'work done under contract,' (b) 'on or about the premises of the employer,' and (c) in an operation of the employer's usual business there conducted. Grauf v. City of Salem, Mo.App., 283 S.W.2d 14, 17(2); Snethen v. American Compressed Steel, Mo.App., 272 S.W.2d 850, 854. See Shafer v. Southwestern Bell Tel. Co., Mo., 295 S. W.2d 109, 115. 'Premises,' as used in the cited statute, 'contemplates any place, *under the exclusive control of the employer,* where the employer's usual business is being carried on or conducted * * *.' Sargent v. Clements, 337 Mo. 1127, 1134, 88 S.W.2d 174, 178(5); State ex rel. Potashnick v. Fulbright, 350 Mo. 858, 862, 169 S.W.2d 59, 61(2); Baker v. Iowa-Missouri Walnut Log Co., Mo. App., 270 S.W.2d 73, 76(4). This definition of 'premises' is compatible with subsection 2 of Section 287.040 which states that '[t]he provisions of this section shall apply to the relationship of landlord and tenant, and lessor or lessee, when created for the fraudulent purpose of avoiding liability, *but not otherwise.'* (Emphasis ours.) * * *"

As there was no suggestion of fraudulent purpose, the court in the Simpson case, supra, affirmed the Circuit Court's affirmation of the Commission's finding that the relation between the claimant and Simpson Oil Company was not that of an employer and employee but that of landlord and tenant. We concur in Johnson v. Simpson Oil Company, supra, and find it determinative of the issues presented here.

■ In the case before us there is no evidence of any kind in the record that the relationship created by the lease was for fraudulent purposes and we find the Commission's finding fully supported by the evidence.

The judgment of the Circuit Court affirming the award of the Commission is affirmed.

ANDERSON and RUDDY, JJ., concur.