**Roy L. DOWNING and Maryland Casualty Co., Plaintiffs,**

v.

**DONDLINGER & SONS CONSTRUCTION CO., Inc., and Link-Belt Speeder Co., Defendants.**

**No. 15524–4.**

United States District Court
W. D. Missouri, W. D.
Nov. 20, 1968.

Rodger J. Walsh, Biersmith & Walsh, Kansas City, Mo., for plaintiffs.

Rogers, Field & Gentry, Kansas City, Mo., for Link-Belt Speeder Co.

John Alder, Kansas City, Mo., for Dondlinger & Sons Const. Co.

## MEMORANDUM AND ORDER GRANTING DEFENDANT DONDLINGER & SONS JUDGMENT NOTWITHSTANDING THE VERDICT

ELMO B. HUNTER, District Judge.

This matter is presently before the Court on defendant Dondlinger's motion to set aside the jury verdict and for judgment notwithstanding the verdict.

This is a diversity action arising out of a very serious accident and resultant injury to plaintiff Roy Downing while he was employed as a steel worker on the construction of military housing on the premises at Fort Leonard Wood, Missouri. At the time of the accident the military post at Fort Leonard Wood was owned by the United States Government.

Dondlinger & Sons Construction Co., a Kansas corporation, had a general contract with the government to erect housing on the post. Under this contract Dondlinger was responsible for the completion of the entire project outlined in the contract and was designated therein as the prime contractor. Wahib Steel Co. had a subcontract with Dondlinger to furnish and place the reinforcing steel for the housing. Wahib is not a party to this action, but the injured plaintiff Downing, a resident of Arkansas, was an employee of Wahib at the time of the accident and was working in the course of that employment. Plaintiff Maryland Casualty Co., a Maryland Corporation, was the insurance carrier for Wahib Steel. Maryland has paid substantial workmen's compensation payments to Downing and is continuing to make such payments. Link-Belt Speeder Co., an Iowa Corporation, was

the manufacturer of the crane involved in the accident and injury to Downing.

The accident occurred on November 23, 1964. Downing was working on the third floor level of a partially completed building placing and tying steel. The steel was being lifted to this level by a crane and operator furnished by Dondlinger as provided in the subcontract between Dondlinger and Wahib. There was conflicting evidence as to exactly how the steel was descending when it struck Downing. One version was that it was coming down at an angle, swinging and jerking, and slammed into his side and then into his back. There was also testimony that the steel was swung over the building and then fell down "like a bullet" when the operator released pressure on the foot brake holding the load. Regardless of how the load of steel was falling it is undisputed that it struck Downing in the back and side seriously injuring him. As a result of this injury Downing is completely paralyzed below his waist and is confined to a wheel chair except that for very brief periods he is able to move short distances by the use of Canadian crutches. Downing has also lost the control of some of his bodily functions. He requires almost constant care and periodic medical treatment and will continue to require such care and treatment.

Suit was filed against Dondlinger on the theory of negligence. Dondlinger's primary defense was that it was a statutory employer under the Missouri Workmen's Compensation Act[1] and that the compensation statute provided the exclusive remedy for Downing. Suit was filed against Link-Belt as a products liability action on a theory of breach of implied warranty. Link-Belt's primary defense was that the crane was not defective and certainly not defective at the time it left Link-Belt's custody and control, but that the injury was caused by the negligence of the crane operator. All parties agreed that Missouri law was applicable and controlling on all the substantive issues in the case.

Prior to trial a dispute arose as to which section of the Missouri Workmen's Compensation Act was applicable, i. e. section 287.040(1) or section 287.040(3). Dondlinger contended that subsection 3 was controlling, and that under the Missouri cases construing this subsection, it was entitled to a directed verdict. Plaintiffs contended that neither subsection controlled, but that if the workmen's compensation act were applicable, subsection 1 thereof was controlling; that under this subsection whether or not Dondlinger was a statutory employer was a question for the jury. The Court was of the opinion that subsection 3 did control the question and that defendant was entitled to a directed verdict at the close of plaintiffs' case and also at the close of all the evidence, as requested by defendant Dondlinger. However, because of the serious nature of plaintiff's injury and the possibility that the Court might be in error as to the applicable Missouri law, and to obviate the possible need of a retrial, the Court decided to submit the case to the jury under subsection 1 by special interrogatories.

The jury was instructed on plaintiffs' contention that the operator of the crane, who was Dondlinger's employee, negligently caused the load of steel to fall on Downing. In the same instruction the jury was told that it was Dondlinger's contention that first, its employee was not negligent, and second, that even if the operator had been negligent, Downing could not maintain an action against Dondlinger because it was a statutory employer under subsection 1. This instruction was accompanied by two special interrogatories. The first asked

---

1. Under the Missouri Workmen's Compensation Act [Mo.Rev.Stat. Sections 287.010–287.800 (1959)] if a person is deemed to be a statutory employer he is liable for workmen's compensation payments to the injured employees of his employees, but is protected from a common law action by the injured employee.

whether Dondlinger's employee had negligently dropped the steel on Downing. The second asked whether Dondlinger had exclusive control of the premises in question which was the only disputed element of statutory employment under section 287.040(1). Plaintiffs objected to this instruction on the ground that a common law negligence instruction was the only proper instruction. Dondlinger objected on the ground that subsection 1 of the Workmen's Compensation Law was not applicable and that the case was controlled by subsection 3 thereof entitling Dondlinger to a directed verdict and judgment as a matter of law.

As to defendant Link-Belt's aspect of the case the jury was instructed to find for plaintiffs and against Link-Belt if they found that the crane had left the custody and control of Link-Belt in a defective condition and that this defective condition caused the injury to Downing. This instruction was also accompanied by special interrogatories seeking to determine the nature of the defect, if any, at the time the crane left Link-Belt and to determine if this crane remained in such defective condition up to the time of the accident.

The jury returned a verdict in the amount of $327,000.00 for the plaintiffs and against Dondlinger. As to the implied warranty aspect of the case the jury found for Link-Belt and against the plaintiffs. In answer to the special interrogatories the jury stated that the negligence of Dondlinger's crane operator had caused the steel to fall on Downing and that Dondlinger did not have exclusive control over the premises where the accident occurred. The jury also stated that it found no defect in the crane either at the time it left the custody or control of Link-Belt or at the time of the accident. In accordance with the findings of the jury the Court on October 10, 1968, entered a judgment in favor of the plaintiffs and against Dondlinger in the amount of $327,000.00. It is this judgment that Dondlinger is seeking to set aside.

In its motion to set aside the judgment Dondlinger raises the following contentions: (1) Section 287.040(3) is the applicable section and is controlling under the cases and statutes of Missouri, and under this section Dondlinger was entitled to a directed verdict and to judgment notwithstanding the verdict. (2) Even if section 287.040(1) is the applicable section all the evidence presented was that Dondlinger had exclusive control of the premises in question. Therefore, this question should not have been submitted to the jury, and the verdict of the jury is against the weight of the evidence and should be set aside. (3) That plaintiff did not introduce any evidence that Dondlinger's employee was negligent. That the only evidence of the operator's negligence was introduced by Link-Belt and plaintiffs could not use this evidence because they contended that the accident was caused by the defective crane.

In their opposing brief the plaintiffs raise the following contentions: (1) That Dondlinger abandoned section 287.-040(3) and waived submission under this section. (2) That subsections 1 and 3 both require a finding that the purported statutory employer had exclusive control over the premises where the accident occurred and since the jury found against Dondlinger on the question of exclusive control it was not a statutory employer as to Downing. (3) That in the subcontract between Dondlinger and Wahib there was a provision that stated that the "general contractor (Dondlinger) to furnish crane with operator to unload and spot bundles, to hoist materials including setting of prefabricated reinforcing steel. This crane to be available during the regular working hours for this contractor's use (Wahib)." Plaintiffs argue that this provision has the legal effect of making Dondlinger a subcontractor of Wahib as to the furnishing of the crane; that therefore when Dondlinger injured Downing it was acting in the capacity of a stranger or at best a fellow employee

of Downing and under Missouri law could be sued by Downing for common law negligence.

The Court is of the opinion that under Missouri law section 287.040(3) is the controlling section and under the cases construing this section Dondlinger is entitled to judgment notwithstanding the verdict. Because this fully disposes of the matter the Court will not rule on or discuss questions not necessary to or involved in the Court's decision.

■ Two preliminary matters to the decision should be discussed. First, it is clear, and the Court rules, that Dondlinger did not abandon or waive section 287.040(3) as contended by the plaintiffs. At the last pretrial conference and at the time of instructing the jury Dondlinger contended that subsection 3 was the applicable statutory provision, and that it was entitled to a directed verdict. Dondlinger objected to the giving of the instruction based upon subsection 1 and requested judgment based upon subsection 3. Throughout the trial Dondlinger made it clear that it was relying upon section 287.040 (3). Second, exclusive control is not a necessary element of statutory employment under section 287.040(3). That subsection makes no mention of exclusive control. The cases cited by plaintiffs are not in point on this question. These cases were dealing with subsection 1 which expressly requires exclusive control before a person can be a statutory employer.

■ Under the undisputed facts of this case and the applicable Missouri statutes and cases Dondlinger is a statutory employer and as such is protected from a common law action by Downing. The applicable section, i. e. 287.040(3) reads as follows:

"3. The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor *but such independent contractor shall*

*be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work* (emphasis added)."

■ The Missouri Supreme Court and the Missouri courts of appeal have construed section 287.040(3) many times in cases very similar to the one under consideration here. The leading Missouri case on the question is Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, 155, 156 (En Banc 1938). In Bunner the City of Kansas City, Missouri, was the owner of the premises. Patti Construction Co. was given a general contract to construct a public building. In turn Patti subcontracted parts of the project to various subcontractors. Bunner was the employee of one of these subcontractors. While working on the job site Bunner was injured by the negligence of one of Patti's employees. Bunner received workmen's compensation payments from his immediate employer and then sued Patti in a common law action. In deciding that the plaintiff was barred from suing the general contractor the Missouri court stated:

"We are, therefore, squarely confronted with the single question whether the employee of a subcontractor if negligently injured by the general contractor can sue the latter for damages at common law as a third person and at the same time collect compensation from his immediate employer under the Compensation Act—when the immediate employer carries liability insurance covering the casualty and all the other facts bring the case within the Compensation Act."

The supreme court answered the question negatively holding that:

"It is the obvious intent of Sec. 3308 (now section 287.040) to cover each contractor and subcontractor on a project * * * with reference to all the employees immediately or remotely under him. All such contractors not

only are liable under the Act but are protected by it. Subsection (c) of Sec. 3308 [now section 287.040(3)] says the principal contractor shall be *deemed* the employer of the employees of his subcontractors and their subcontractors. Subsection (d) [now section 287.040(4)] provides the immediate (principal) contractor or subcontractor shall be *liable* as an employer of the employees of his subcontractor. And Sec. 3301 [now section 287.120] says when the employer and employee are under the Act the former may not be sued at law, and the latter can recover only compensation."

This case makes it clear that where, as is the case here, the injured employee is entitled to receive (and has received) compensation payments from his employer he cannot sue the general contractor for damages and is limited to his compensation award. The Missouri Supreme Court's rationale for this decision was that under the terms of the statute the general contractor was primarily liable to the injured employee for the payment of compensation and therefore was entitled to the protection of the Act.

The next Missouri case to consider this question was Thompson v. Kroeger, 380 S.W.2d 339, 343 (Mo. 1964). Here H. B. Deal Construction Co. was the general contractor on the building of a shopping center. Defendant Kroeger was a subcontractor of Deal on this job. Plaintiff Thompson was the employee of another subcontractor of Deal. Plaintiff was injured through the negligence of Kroeger and filed suit against both Kroeger and Deal. The supreme court affirmed a summary judgment for the general contractor Deal stating:

"[D]efendant Deal was plaintiff's statutory employer by reason of § 287.040, and that plaintiff was therefore precluded from maintaining a common law action against Deal under the provisions of § 287.120. * * * That question was squarely decided in the case of Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, wherein we held that by reason of the aforementioned statutes the subcontractor's injured employee could not maintain a common law action for damages against the general contractor. Plaintiff says that Bunner is not sound and suggests that it should be overruled. We have re-examined the Bunner case and have concluded that it is sound and that it should continue to be followed in this state."

In Anderson v. Steurer, 391 S.W.2d 839, 843 (Mo. 1965) the Supreme Court of Missouri again construed section 287.040(3). In Anderson, the George Moeller Construction Co. had a general contract to build a church on premises owned by the Mount Tabor Evangelical and Reformed Church. Moeller entered into a subcontract agreement with the defendant Steurer. Steurer had an arrangement with a George Stroup Lathing Co. to perform part of this work. Anderson, the plaintiff, was an employee of Stroup and was injured through the negligence of Steurer. The question before the court was whether the holding in Bunner v. Patti would be extended to protect a subcontractor against a common law action by an employee of his subcontractor. The plaintiff contended that Bunner v. Patti was unsound and out of line with the majority view and in any event should not be extended to cover this type of situation. The court disagreed and extended Bunner to this case expressly reaffirming the holding in Bunner. In reaching this result the Court stated:

"The law has been well settled in Missouri since the case of Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, that under the Missouri Workmen's Compensation Law, the employee of a subcontractor may not sue the general contractor as a negligent third party for negligence resulting in an "on-the-job" accident and injury to the employee. The general contractor in that situation is a statutory employer

of the injured employee under § 287.040."

The latest Missouri case to construe this section is Bailey v. Morrison-Knudsen Co., 411 S.W.2d 178 (Mo. 1967). Here the defendants had a contract with the United States Government for the construction of missile sites throughout the state. In order to keep in constant touch with the various projects the defendants contracted with Mississippi Valley Helicopters, Inc., for helicopter service. Plaintiff, an employee of Helicopters, was injured while making a landing at one of the missile sites. During the processing of the case a dispute arose as to which subsection of 287.040 was applicable. The supreme court did not specifically consider this question, but instead held that the holding in Bunner v. Patti (a case which applied subsection 3) was controlling and under that case an employee of the subcontractor who is injured and collects workmen's compensation payments is barred from suing the general contractor.

Under the above discussed Missouri statute and cases plaintiff Downing cannot recover from Dondlinger. There is no dispute as to the pertinent facts of this case. The premises on which the injury occurred were owned by the United States Government. Dondlinger was the general contractor on the job. Downing was an employee of Wahib, a subcontractor of Dondlinger. He was injured while working on or about the premises where the general contractor Dondlinger was doing work. And Downing was entitled to receive and is receiving compensation payments from his employer. These are the facts that Missouri courts have held controlling in applying section 287.040(3), and in finding statutory employment in a long line of cases.

Plaintiffs attempt to distinguish Bunner and the cases that have followed it on the ground that the provision in the subcontract, requiring Dondlinger to furnish a crane with operator to unload and spot bundles and to hoist materials for Wahib's use, as a matter of law makes Dondlinger a subcontractor of Wahib. Therefore as to an incident involving the crane it could not be a statutory employer of Downing. This is not a valid distinction. The presence of this contract provision does not prevent Dondlinger from being the statutory employer of Downing.

The fundamental purpose of section 287.040 of the compensation act is to assure protection to the employees of subcontractors who are not financially responsible. See, Walton v. United States Steel Corp., 362 S.W.2d 617 (Mo. 1962), and cases there cited. The statute accomplishes this by making each general contractor and subcontractor on a project liable for compensation payments to all employees immediately or remotely under him. It then provides that such contractors who are liable under the compensation act are also protected by it from common law negligence actions brought by employees injured in the course of their employment. Where, as here, the contract between Dondlinger and Wahib clearly establishes the legal relationship of prime contractor and subcontractor, the prime contractor under the provisions of section 287.040(3) is the statutory employer of the employees of the subcontractor. If for any reason the subcontractor is or becomes financially not responsible, the injured employee of a subcontractor has the assurance of a responsible statutory employer—namely, the prime contractor. This assurance of responsible financial coverage under the compensation act to workmen injured in the course of their employment is the very heart and purpose of section 287.040(3), and that section should not be emasculated or impaired by loose construction simply because an injured employee believes that under the particular facts of his case he can demonstrate negligence and obtain a larger sum of money in a common law damage suit than he would obtain under the applicable payment provisions under the compensation law.

To rule in accordance with plaintiffs' contention would require this Court to ignore the plain and unambiguous language of section 287.040(3), and would require a strained and tortuous construction that would substantially reduce the coverage and protection provided by that subsection to injured employees when the Missouri courts have indicated that the entire Workmen's Compensation Act should be liberally construed so as to provide this coverage and protection. See, Bullock v. Potashnick, 237 Mo.App. 665, 162 S.W.2d 607 (1942), and Dixon v. Postlewait Glass Co., 241 Mo.App. 174, 283 S.W.2d 93 (1951). Regardless of what the relationship is between Dondlinger and Wahib as to the use of the crane there is no dispute that Dondlinger is still, as far as the whole project is concerned, the general contractor and Wahib is his subcontractor. This is the relationship that the statute speaks of and the Missouri Supreme Court looked to in Bunner and the subsequent cases.

To follow plaintiffs' contention would require the reading by implication of language into the subsection to the effect that the general contractor shall be deemed to be the employer of the employees of his subcontractors except where the general contractor furnishes a piece of equipment or tools that injure the subcontractor's employee. The language of the statute does not say this and this Court is convinced the Missouri Supreme Court would not by implication read such language into the statute.

It is noteworthy that although the Missouri courts have never directly decided this exact question there have been cases where the defendant contractor being 'sued has furnished the equipment causing the injury and the courts have not taken this into consideration in deciding whether or not there is statutory employment. In Anderson v. Steurer, supra, it was the defendant Steurer who furnished the scaffold that collapsed and injured plaintiff. The Missouri Supreme Court cited Bunner v. Patti and held that under section 287.040 (3) Steurer was a statutory employer and could not be sued in a common law action, all without discussing or considering the fact that defendant furnished the equipment which injured the plaintiff. The court in Steurer did not indicate whether there was a contract requiring the defendant to furnish this scaffold but the lack of attention the court gave the entire issue indicates that it was not a factor it considered important.

Plaintiffs' contention also ignores the realities of the contracting business. According to the terms of the contract between Dondlinger and the United States Government, Dondlinger was to be entirely responsible for the completion of all the work called for in the contract. Therefore any work that Wahib did was actually work which Dondlinger was obligated to do and for which Dondlinger was responsible. The effect of Dondlinger furnishing the crane to Wahib was that Dondlinger simply decided to keep this part of the required work for itself. A second way of looking at this contract provision is that in effect Dondlinger was partially paying Wahib by letting it use the crane rather than having Wahib obtain a crane somewhere else and reflect this additional charge in the contract price between Dondlinger and Wahib.

Also, Wahib did not have control over the crane as would be expected if it was part of a subcontract agreement. The undisputed evidence at the trial was that the crane was run, fueled, oiled and maintained by Dondlinger. It was Dondlinger's supervisor who told the operator where to work with the crane and when to do this work. Only Dondlinger could fire the operator. The only direction that Wahib had over the operation of the crane was the general direction necessary to assist the operator in lifting and lowering bundles and placing the steel. The contract provision did not even specify that a particular crane was to be used and the evidence was that at different times different cranes were made available for Wahib's use. It was Dondlinger's supervisors who decided which crane

was to be made available to Wahib and directed the operator accordingly. This is clearly inconsistent with Wahib having a subcontract directed to a particular crane.

Finally, plaintiffs' proposed construction of the compensation act would have absurd results. For example, in the instant situation if there had been three people injured by the falling steel, Downing, the employee of Wahib, an employee of Dondlinger and an employee of another subcontractor, the result in the disposition of the three cases would be inconsistent. Downing would get both compensation payments and the right to sue Dondlinger at common law while the other injured employees would be limited solely to the compensation payments although all three were injured on the same job by the same falling steel. Surely the Missouri legislature did not intend such an inconsistent result and this Court does not believe that the Missouri Supreme Court would sanction such a result. That the Missouri Supreme Court would not permit such inconsistent treatment is indicated by the following language from Bailey v. Morrison-Knudsen Company, supra, 411 S.W.2d at 181.

> "Neither is there any discernible intent (by the compensation act) to prefer one class of employees over another, by permitting the employees of a subcontractor to recover from him compensation for injuries and at the same time sue the remote employer for negligently inflicting them; whereas the direct employees of the same remote employer, perhaps injured in the same accident, would be allowed compensation alone."

For the above discussed reasons defendant Dondlinger's motion for judgment notwithstanding verdict is sustained and it is hereby ordered that judgment in the above styled case be entered for the defendant Dondlinger & Sons Construction Co. and against plaintiff Roy Downing and plaintiff Maryland Casualty Co.

It is so ordered.